IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-cv-388 |
| v. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GOOGLE INC.. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT GOOGLE INC.'S CORRECTED MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(a)(1)) ................................................................................................................2

III.   PROCEDURAL HISTORY....................................................................................2

      A.    The '914 Patent Litigation (*SimpleAir I*) ..............................................2

      B.    The '279 Patent and '154 Patent Litigation (*SimpleAir II/III*)................................3

      C.    The Current '838 Patent and '048 Patent Litigation (*SimpleAir IV*) .......................4

IV.    LEGAL STANDARD..............................................................................................5

V.     ARGUMENT ..........................................................................................................7

      A.    The Doctrine of Claim Preclusion Bars SimpleAir's Infringement Claims ...........8

            1.    The '838 and '048 Patents Could And Should Have Been Brought In The Consolidated *SimpleAir II/III* Action ................................................8

            2.    SimpleAir Cannot Avoid Claim Preclusion By Arguing That The Patents-In-Suit Were Not Issued Until Early 2014...................................10

            3.    SimpleAir's Argument That Its New Complaint Raises An "Independent And Distinct Cause Of Action" Is Incorrect ......................15

      B.    SimpleAir's Post-Judgment Infringement Claims Should Be Dismissed Under the *Kessler* Doctrine.....................................................................23

      C.    If Claim Preclusion Did Not Shield Pre-Judgment Activity, Then the *Kessler* Doctrine Should Be Applied to Shield Pre- and Post-Judgment Activity Alike.......................................................................................26

VI.    CONCLUSION......................................................................................................28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbey v. Mercedes-Benz of N. Am., Inc.*,
    138 F. App'x 304 (Fed. Cir. 2005) ................................................................. 16, 17

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008) ........................................................... 6, 20, 21

*Adaptix, Inc. v. Amazon.com, Inc.*,
    No. 5:14-cv-01379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) ........................................... 5

*Adaptix, Inc. v. Amazon.com, Inc.*,
    No. 5:14-cv-01379-PSJ, 2016 WL 948960 (N.D. Cal. Mar. 14, 2016) .................................... 6

*Anascape, Ltd. v. Nintendo of Am. Inc.*,
    601 F.3d 1333 (Fed. Cir. 2010) ................................................................. 12, 21

*Antares Pharma, Inc. v. Medac Pharma Inc.*,
    771 F.3d 1354 (Fed. Cir. 2014) ............................................................. 11, 18, 20

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
    672 F.3d 1335 (Fed. Cir. 2012) ............................................................. 10, 11, 12

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ........................................................................ 9

*Brain Life, LLC v. Elekta, Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) .............................................................. passim

*Duffie v. United States*,
    600 F.3d 362 (5th Cir. 2010) ............................................................... 5, 6, 8

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC*,
    349 F.3d 1373 (Fed. Cir. 2003) ............................................................... 19, 23

*Hallco Mfg. Co. v. Foster*,
    256 F.3d 1290 (Fed. Cir. 2001) ..................................................................... 10

*Houston Professional Towing Ass'n v. City of Houston*,
    812 F.3d 443 (5th Cir. 2016) ........................................................................ 6

*Kearns v. Gen. Motors Corp.*,
    94 F.3d 1553 (Fed. Cir. 1996) ...................................................................... 16

*Kessler v. Eldred*,
    206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907) .......................................... passim

*Langston v. Ins. Co. of N. Am.*,
827 F.2d 1044 (5th Cir. 1987) ................................................................... 12, 14

*LendingTree, LLC v. Zillow, Inc.*,
No. 3:10-CV-00439-FDW, 2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) .......... 12, 18, 20, 21

*Medinol Ltd. v. Cordis Corp.*,
15 F. Supp. 3d 389 (S.D.N.Y. 2014) ...................................................... 12, 18, 20, 21

*MGA, Inc. v. Gen. Motors Corp.*,
827 F.2d 729 (Fed. Cir. 1987) ...................................................................... 7, 24, 25

*New Jersey Inst. of Tech. v. Medjet, Inc.*,
47 F. App'x 921 (Fed. Cir. 2002) .......................................................................... 22

*Nystrom v. Trex Co.*,
580 F.3d 1281 (Fed. Cir. 2009) ........................................................................... 6, 9

*Oracle Am., Inc. v. Google Inc.*,
No. C 10-03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012) .............................. 12, 19

*Pactiv Corp. v. Dow Chem. Co.*,
449 F.3d 1227 (Fed. Cir. 2006) ............................................................................. 15

*Roche Palo Alto LLC v. Apotex, Inc.*,
531 F.3d 1372 (Fed. Cir. 2008) ............................................................................. 10

*SciMEd Life Sys. v. Adv. Cardiovascular Sys., Inc.*, No. C 99-0112, 1999 WL 33244568 (N.D.
Cal. May 17, 1999) ................................................................................................. 19

*Senju Pharm. Co., Ltd. v. Apotex Inc.*,
746 F.3d 1344 (Fed. Cir. 2014) ................................................................... passim

*SimpleAir, Inc. v. Google Inc. et al.*,
No. 2:14-cv-00011 (E.D. Tex.) ..................................................................... passim

*SimpleAir, Inc. v. Google Inc.*,
Case No. 2:11-cv-00416-JRG (E.D. Tex.) ................................................. 2, 3, 8, 18

*SimpleAir, Inc. v. Google Inc.*,
No. 2:13-cv-00937 (E.D. Tex. ...................................................................... 3, 14, 15, 18

*SimpleAir, Inc. v. Sony Ericsson Mobile Comm'ns AB*,
-- F.3d --, 2016 WL 1274445 (Fed. Cir. April 1, 2016) ........................................... 3

*SpeedTrack, Inc. v. Office Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015) ............................................................................ 7, 24, 26

*Stoller v. Hyperstealth Biotechnology Corp.*,
  131 F. App'x 280 (Fed. Cir. 2005) ............................................................................ 22

*Trading Tech Int'l, Inc. v. BCG Partners, Inc.*,
  No. 10 C 715, 2011 3157304 (N.D. Ill. Jul. 26, 2011) ............................................ 19

*Verde v. Stoneridge, Inc.*,
  -- F.Supp. 3d --, 2015 WL 5915262 (E.D. Tex. Sept. 23, 2015) ............................... 9

*Xlear, Inc. v. STS Health, LLC*,
  No. 2:14-CV-00806-DN, 2015 WL 8967574 (D. Utah Dec. 15, 2015) ..................... 5

*Young Eng'rs, Inc. v. U.S.I.T.C.*,
  721 F.2d 1305 (Fed. Cir. 1983) .................................................................................. 9

**Statutes**
37 C.F.R. § 1.141(a) .......................................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 5

**Other Authorities**
2 IP Litigation Guide: Patents & Trade Secrets § 18:2 (2016) ........................................ 16

Restatement (Second) of Judgments § 24) (1982) ................................................. 21

Restatement (Second) of Judgments, § 24, cmt. (b) ................................................. 21

## I.    INTRODUCTION

Notwithstanding SimpleAir's three prior failed lawsuits, Google finds itself facing a fourth SimpleAir lawsuit against the exact same products SimpleAir accused previously: its Google Cloud Messaging and Cloud to Device Messaging services (collectively, "GCM").  In all three prior actions against these products—each of which involved terminally-disclaimed, continuation patents directed to a single invention—Google has prevailed (once by mandate of non-infringement from the Federal Circuit, once by voluntary dismissal with prejudice, and once by a jury verdict of non-infringement).  Now, in this action, SimpleAir again accuses GCM of infringing two more of its terminally-disclaimed, continuation patents directed to the very same invention as in the three prior actions.  Under traditional principles of claim preclusion this action should be dismissed because the patents asserted in this case, which issued in January and February of 2014—more than two years before the present case was filed—*could and should have been asserted* in the third prior action filed January 8, 2014.  And to the extent traditional claim preclusion does not bar this action, the recently-affirmed *Kessler* doctrine does.

Google respectfully requests that the Court end SimpleAir's serial litigation and dismiss this action.  SimpleAir's strategic decision to split its claims between a parent application and several continuation applications (as opposed to putting all claims in one application) should not give it an escape-hatch from claim preclusion and *Kessler*.  First, a continuation application is a second application for the *same invention* claimed in a prior non-provisional application and must share the *same specification* as its parent. Consequently, all claims in a continuation application necessarily could have been included in the original parent application, and an entire family of separately issued continuation patents should therefore be deemed equivalent to a single patent under existing law.  Second, in the prosecution of both the patents asserted here (as in the case of each of the previously asserted patents), SimpleAir filed *terminal disclaimers* to overcome double

patenting rejections based on earlier-filed patents in the same family—further evidencing that the continuation patents asserted here are for the same, patentably indistinct invention claimed in the patents at issue in the prior actions.  Third, the U.S. Patent Office had issued notices of allowance on September 10, 2013, with respect to both patents asserted here, yet SimpleAir in both cases waited the maximum three months until December 10, 2013, to pay the corresponding issue fees— conduct which underscores that SimpleAir's decision not to include these patents in the prior action was entirely strategic.

Allowing patentees to avoid preclusion through the gambit of strategically timed continuation applications and delayed issue fee payments would simply encourage gamesmanship, and would frustrate the goals of finality and economy that claim preclusion and the *Kessler* doctrine promote.  Applying these well-established doctrines—claim preclusion and *Kessler*—this case should be dismissed.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(a)(1))

Under claim preclusion and/or the Kessler doctrine, may a patentee file a successive suit against the same accused products asserting a continuation of a patent that was previously litigated to final judgment, when the continuation patent could have been asserted in the previous suit?

## III.    PROCEDURAL HISTORY

### A.    The '914 Patent Litigation (*SimpleAir I*)

On September 15, 2011, SimpleAir filed its first patent infringement suit against Google, asserting that GCM infringed the asserted claims of U.S. Patent Nos. 7,035,914 ("the '914 Patent") and 6,021,433 ("the '433 Patent").  *SimpleAir, Inc. v. Google Inc.*, Case No. 2:11-cv-00416-JRG (E.D. Tex.) ("*SimpleAir I*"), Dkt. 1, Ex. A; *see also* Dkts. 764-65 (Court's JMOL Opinions). SimpleAir ultimately dismissed its claims based on the '433 Patent and proceeded to trial on the

2

'914 Patent. After the first trial, the jury found that the asserted claims were infringed and valid, but were unable to reach a decision on damages. Dkt. 601. Thereafter, the Court conducted a re-trial limited to the issue of damages, and the jury awarded $85 million. Dkt. 718. The trials in *SimpleAir I* took place in January and March 2014; the Liability Judgment was entered on February 10, 2014 and the Damages Judgment was entered May 13, 2014. Dkt. 743.[1] On appeal, however, the Federal Circuit reversed the infringement verdict and ruled that Google does not infringe the '914 Patent claims as a matter of law. *SimpleAir, Inc. v. Sony Ericsson Mobile Comm'ns AB*, -- F.3d --, 2016 WL 1274445 (Fed. Cir. April 1, 2016).

**B.      The '279 Patent and '154 Patent Litigation (*SimpleAir II/III*)**

On November 4, 2013 and January 8, 2014 — while *SimpleAir I* was still pending before this Court — SimpleAir filed two new lawsuits against Google, which were consolidated. *SimpleAir, Inc. v. Google Inc. et al.*, No. 2:14-cv-00011 (E.D. Tex.); *SimpleAir, Inc. v. Google Inc.*, No. 2:13-cv-00937 (E.D. Tex.) (collectively "*SimpleAir II/III*"). The asserted patents in these consolidated cases were U.S. Patent Nos. 8,572,279 ("the '279 Patent") and 8,601,154 ("the '154 Patent"). The '279 and '154 Patents have the same title ("System and Method for Transmission of Data") and specification as the '914 Patent. Moreover, the '279 and '154 Patents are both continuations of Application No. 11/409,396, which itself is a continuation of the 17 year-old application that matured into the '914 Patent. No. 2:14-cv-00011, Dkt. 1, Exs. A-B. During the prosecution of all three patents ('914, '279, '154 Patents), SimpleAir filed a terminal disclaimer to avoid a double-patenting rejection. The '154 Patent issued on October 29, 2013 and the '279 Patent issued on December 3, 2013.

On October 12, 2015, SimpleAir dismissed its claims based on the '154 Patent with prejudice. Dkts. 340, 374, 376. SimpleAir proceeded to trial, asserting claims of the '279 Patent

---

[1]      The Court stayed execution of the judgment(s) on May 28, 2014. Dkt. 743.

against GCM — the same product that it had accused of infringing the '914 Patent.  The jury returned a verdict of non-infringement in Google's favor, and the Court entered final judgment in accordance with the jury verdict on November 4, 2015.  Dkt. 362.

### C.     The Current '838 Patent and '048 Patent Litigation (*SimpleAir IV*)

On April 8, 2016, after *SimpleAir I and II/III* had been resolved in Google's favor, SimpleAir filed the present lawsuit against Google.  Dkt. 1.  The asserted patents are U.S. Patent Nos. 8,639,838 ("the '838 Patent") and 8,656,048 ("the '048 Patent").  The '838 Patent issued on January 28, 2014, and the '048 Patent issued on February 18, 2014, more than two years before the present case was filed.  Significantly, both patents issued during the earliest stages of the previous litigation (*SimpleAir II/III*) — the '838 Patent issued before SimpleAir filed its First Amended Complaint in *SimpleAir II/III*, and the '048 Patent issued five days after (and nearly a month before Google responded to the Amended Complaint).  No. 2:11-cv-00011, Dkts. 17, 23, 24.[2]

Like the preceding '914, '279, and '154 Patents, the '838 and '048 Patents are titled "System and Method for Transmission of Data" and share the same specification.  The '838 and '048 Patents also have the same continuation history as the '279 and '154 Patents, so all four patents are continuations of a common application (Application No. 11/409,396) which itself is a continuation of the '914 Patent.  No. 2:16-cv-388, Dkt. 1, Exs. A-B.  Like the previously-asserted patents, the '838 Patent and '048 Patent are subject to terminal disclaimers, which were filed by

---

[2]     SimpleAir filed its First Amended Complaint to obviate the basis for Google's motion to dismiss based on SimpleAir's duplicative pending actions.  Dkts. 9, 21.  SimpleAir's amended pleading was filed before the initial scheduling conference was conducted or a Docket Control Order was entered.  Thereafter, a Docket Control Order was entered that gave the parties until January 7, 2015 to amend the pleadings.  Dkts. 27-1, 30.

the patentee to overcome a double-patenting rejection.  Exs. A, B, C, D (terminal disclaimers & interview summaries).[3]  The accused product in this case is, once again, GCM.  *Id.* at ¶ 1.

## IV.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a lawsuit is subject to dismissal if it fails to state a claim upon which relief may be granted.  Both of the doctrines asserted in this Motion — claim preclusion and the *Kessler* doctrine — are appropriately adjudicated at the motion-to-dismiss stage.  *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) (affirming dismissal on claim preclusion grounds); *Adaptix, Inc. v. Amazon.com, Inc.*, No. 5:14-cv-01379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) (granting dismissal on *Kessler* grounds).

"Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."  *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010); *accord Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014) ("[C]laim preclusion bars both claims that were brought as well as those that ***could have been brought***.") (emphasis in original).  In a patent case such as this one, claim preclusion is a mixed question of regional circuit law and Federal Circuit law.  *Senju*, 746 F.3d at 1348.  "We look to the law of the regional circuit in which the district court sits for guidance regarding the principles of claim preclusion; however,

---

[3]   The notices of allowance of claims and fees due for the '838 and '048 Patents both issued on September 10, 2013 — ***before*** SimpleAir filed its Complaint in *SimpleAir II/III*.  Exs. E (Notice of Allowance for '838 Patent); F (Notice of Allowance for '048 Patent).  SimpleAir elected to wait the maximum three months before paying the required issue fees for both patents, thereby delaying their issuance.  Exs. G (Issue Fee Payment for '838 Patent); H (Issue Fee Payment for '048 Patent).  Perhaps not coincidently, the '838 Patent Issue Notification issued January 8, 2014—the same day SimpleAir filed *SimpleAir III*.  Ex. I (Issue Notification for '838 Patent).  The Issue Notification for the '048 Patent is dated January 29, 2015, which is more than two weeks before SimpleAir filed its Amended Complaint in the consolidated *SimpleAir II/III*.  Ex. J (Issue Notification for '048 Patent).  The Court may, of course, take judicial notice of these various prosecution documents.  *See, e.g., Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574, at *3 (D. Utah Dec. 15, 2015) ("In the context of patents, district courts may take judicial notice of patent documents such as the patent's prosecution history.")

whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply our own law to that issue." *Id*. Under Fifth Circuit law, "[t]he test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Duffie*, 600 F.3d at 372.[4]   To determine whether causes of action are the same for preclusion purposes, the Fifth Circuit (and Federal Circuit) have adopted the "transactional test" articulated in the Restatement (Second) of Judgments. *Houston Professional Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). "The transactional test focuses on whether the two cases 'are based on the same nucleus of operative facts." *Houston Professional Towing*, 812 F.3d at 447. "It is the 'nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted' that defines the claim."   *Id*.   Moreover, "'what factual grouping constitutes a 'transaction,' . . . is to be determined pragmatically giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit,

---

[4]   The Federal Circuit has suggested that claim preclusion may only bar successive litigation for acts of infringement that occurred before the final judgment in the preceding lawsuit. *Brain Life*, 746 F.3d at 1054.  However, at least one District Court has held to the contrary, based on Federal Circuit precedent pre-dating *Brain Life*.  *See Adaptix, Inc. v. Amazon.com, Inc.*, No. 5:14-cv-01379-PSJ, 2016 WL 948960, at *3 (N.D. Cal. Mar. 14, 2016) (holding that a judgment of non-infringement may bar future claims arising from post-judgment activity) (citing *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991) and *Nystrom v. Trex Co.*, 580 F.3d 1281 (Fed. Cir. 2009)). Additionally, the related doctrine of issue preclusion (collateral estoppel) may bar subsequent litigation on an issue of law or fact that was actually litigated and, thus, preclude successive litigation against post-judgment activity.  *Brain Life*, 746 F.3d at 1054-55.  To the extent this Court does not find SimpleAir's recent lawsuit against the same products barred by the doctrines of claim preclusion or *Kessler*, Google reserves its right to seek dismissal and/or summary judgment based on estoppel, including collateral estoppel principles.

and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *Id.* (quoting *Petro-Hunt LLC v. United States*, 365 F.3d 385, 396 (5th Cir. 2004)).

"There [also] exists a separate and distinct doctrine known as the *Kessler* Doctrine, that precludes some claims that are not otherwise barred by claim or issue preclusion." *Brain Life*, 746 F.3d at 1055.  The *Kessler* doctrine "allow[s] an adjudged ***non-infringer*** to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Id.* at 1056 (emphasis in original).  The doctrine grants a "limited trade right" to products that have been deemed non-infringing — namely, the right for these products to be lawfully made or sold "without interference" from the patentee. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734-35 (Fed. Cir. 1987); *see also SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1326 (Fed. Cir. 2015) ("*Kessler* emphasized the right of the adjudged noninfringing manufacturer to 'sell his wares freely,' and the patent owner's corresponding duty to leave that manufacturer's customers alone.")  The Federal Circuit has explained that the *Kessler* doctrine is a "gap-filling" doctrine, preventing repeated infringement allegations against the same product even when claim preclusion and issue preclusion would not. *Brain Life*, 746 F.3d at 1056.

## V.     ARGUMENT

The doctrines of claim preclusion and *Kessler* foreclose SimpleAir's current lawsuit – which raises patent claims that SimpleAir was aware of (and knew would issue in early 2014) ***before it initiated SimpleAir II/III*** and which purport to cover an invention that the Federal Circuit has already said that Google's GCM does not infringe[5].  The Court must dismiss SimpleAir's

---

[5]   The Federal Circuit has already rejected SimpleAir's attempts to expand the scope of its patent protection through creative claims drafting. In *SimpleAir, Inc. v. Sony Ericcson Mobile Commc'ns,* the Court found that a "key aspect" of the invention disclosed in the '914 patent specification is "the ability of a remote device to receive notifications even when it is not

Complaint for at least the following reasons set forth herein:  (1) First, the asserted patents issued

at the inception of *SimpleAir II/III* and SimpleAir had ample opportunity to assert them in that

case, but chose not to do so; (2) second, the asserted patents are continuations of the patents

asserted in *SimpleAir I* and *SimpleAir II/III* and so are necessarily directed to the same invention

and same nucleus of operative fact as the previously asserted patents (of which Google has been

exonerated of infringement; and (3) the *Kessler* doctrine forecloses serial litigation against

products that have already been found not to infringe.

**A.     The Doctrine of Claim Preclusion Bars SimpleAir's Infringement Claims**

         1.     <u>The '838 and '048 Patents Could And Should Have Been Brought In The Consolidated *SimpleAir II/III* Action</u>

At its core, the doctrine of claim preclusion is intended to bar any claim that could and

should have been brought in a prior action.  It makes no difference that the claim was not actually

litigated or even asserted.  *Duffie*, 600 F.3d at 372; *Brain Life*, 746 F.3d at 1053.  Because both the

'838 and '048 Patents could have been asserted against GCM in the prior actions, SimpleAir's

current claims of infringement of these patents by Google are barred by claim preclusion.

Here, there can be no dispute that the first three elements of the doctrine of claim

preclusion have been met: In this case, SimpleAir is accusing the exact same defendant (Google)

of infringement based on Google's provision of the exact same system and services (GCM) that

---

connected to the Internet by traditional means." Slip Op. at 17, 2015-1251 (Fed. Cir. Apr 1, 2016).
The Court held that SimpleAir insertion of the term "data channel" into its patent claims could not
expand the scope beyond the invention defined by the specification.  *Id.*  The currently asserted
claims are based on the exact same specification as the '914 patent and, thus, face the same
limitation on claim scope.  Notably, upon finding that the claims must require that receipt of
notifications when the remote device is "online or offline" of the Internet, the Federal Circuit
concluded that Google did not infringe SimpleAir's invention as a matter of law.  *Id.*

were previously determined, in a final judgment on the merits, to be non-infringing.[6]  The only arguable area of dispute is whether SimpleAir's allegations in this case arise from the same transaction as the prior litigation and are, therefore, part of the same cause of action against which the doctrine of claim preclusion applies.  Law and logic both demonstrate that they do because the '838 and '048 Patents reflect claims for the exact same invention that both this Court and the Federal Circuit have found Google's GCM system does not infringe.  Ex. K (*SimpleAir II/III* Judgment); Ex L (Federal Circuit Opinion); see also MPEP § 201.07; Section V.A.3 *infra*.

The Federal Circuit has time and time again affirmed the principle that "a patent owner that has unsuccessfully attacked an alleged infringer for the same infringing acts in a prior court proceeding" should not "be given an opportunity to put forth the same charge of infringement again." *Young Eng'rs, Inc. v. U.S.I.T.C.*, 721 F.2d 1305, 1315 (Fed. Cir. 1983) (finding that claim preclusion barred subsequent litigation before the International Trade Commission); *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1284-85 (Fed. Cir. 2009) (claim preclusion applies to all products that are not materially different with respect to "the claim limitations at issue in the first suit"); *see*

---

[6]   Entry of judgment by the district court is sufficiently "final" to warrant application of claim preclusion. *Fidelity Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Georgia,* 510 F.2d 272, 272 (5th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975) (finding that entry of final judgment by the trial court constitutes final judgment for all purpose, including res judicata, "unless and until reversed on appeal"). To the extent the Court may find that there is no "final judgment" in *SimpleAir I* because the Federal Circuit mandate has not yet issued, or that there is no "final judgment" in the '154/'279 case because Rule 50(b) motions on the '279 Patent remain pending, the Court could nonetheless resolve this Motion under the doctrine of claim splitting instead of claim preclusion.  The claim splitting doctrine is functionally equivalent to the claim preclusion doctrine and serves the same purposes, but the claim splitting doctrine bars successive litigation even when there is no final judgment in the first suit.  *Verde v. Stoneridge, Inc.*, -- F.Supp. 3d --, 2015 WL 5915262, *6 (E.D. Tex. Sept. 23, 2015).  However, Google does not believe it necessary to invoke claim splitting instead of claim preclusion.  Even if there were some question about whether the *SimpleAir I and II/III* adjudications are sufficiently "final" for claim preclusion to attach, the final and non-appealable dismissal of the '154 Patent with prejudice is sufficiently "final" for claim preclusion.  *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996) ("That the ITC did not reach the substantive question of infringement does not prevent application of claim preclusion.").

*also Senju*, 746 F.3d at 1348 (claim preclusion applies to newly prosecuted claims that did not exist during prior litigation); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008) (claim preclusion applies to validity challenges even in view of subsequent changes in law). As the Federal Circuit reasoned:  "long-recognized public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest and that matters once tried shall be considered forever settled as between the parties." *Id.* (quoting *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)).  That the prior litigation involved different patent claims; that the patentee subsequently engaged in further prosecution activity; or that the patentee seeks a broader form of relief are of no moment in the claim preclusion analysis. *See id.* at 1315 (the "evils of vexatious ligation and waste of resources" preclude a patentee from asserting claims in the ITC against an adjudged non-infringer); *Senju*, 746 F.3d at 1348 ("Having lost its suit, Senju seeks to use reexamination to obtain a second bite at the apple, to assert its patent against the same party . . . But that is exactly what claim preclusion is designed to prevent."); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-41 (Fed. Cir. 2012) ("[R]eexamination of the '545 patent did not entitle the plaintiffs to avoid claim preclusion because the amended claims relate back to the original '545 patent reissue date."); *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1298 (Fed. Cir. 2001) ("We will not give parties the power to agree to waste the resources of the courts in revisiting infringement determinations that have already been made.").  Having had its first, second, and third "bites at the apple," SimpleAir should not get a fourth.  *Compare Senju*, 746 F.3d at 1348.  As the Federal Circuit found in *Senju*: "This is exactly what claim preclusion is designed to prevent." *Id.*

      2.      <u>SimpleAir Cannot Avoid Claim Preclusion By Arguing That The Patents-In-Suit Were Not Issued Until Early 2014</u>

            (a)      Under The "Transaction Test," It Is Irrelevant That The Patent Claims May Have Issued After SimpleAir Initiated Suit

SimpleAir cannot avoid claim preclusion by arguing that the '838 and '048 Patents did not issue until after it initiated its prior lawsuits against Google.  This argument has been made to and rejected by the Federal Circuit on several occasions.  *Senju*, 746 F.3d at 1347; *Aspex Eyewear*, 672 F.3d at 1340.  For example, in *Aspex Eyewear*, the Federal Circuit held that claim preclusion applied to a claim issued in April 2008 — ***six years*** after the initial lawsuit was filed.  "The court explained that the reexamination of the '545 patent did not entitle the plaintiffs to avoid claim preclusion 'because the amended claims relate back to the original '545 Patent reissue date.'"  672 F.3d at 1340 (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, Case No. 09-61515-CIV, 2010 WL 4553642 (S.D. Fla. Nov. 3, 2010)).  Similarly, in *Senju*, the Federal Circuit held that a prior judgment of invalidity precluded the patentee from asserting subsequently prosecuted claims that emerged from reexamination proceedings approximately ***a year*** after judgment had been entered.  746 F.3d at 1347, 1353 ("At its core, what Senju seeks is a do-over. Having lost its suit, Senju seeks to use reexamination to obtain a second bite at the apple, to assert its patent against the same party, Apotex, and the same product, the Gatifloxacin ophthalmic solution described in ANDA No. 79–084.  But that is exactly what claim preclusion was designed to prevent.").

Having chosen the timing of its prior lawsuits and elected to sue on the patent claims it did (knowing full well that additional claims were pending before the Patent Office), SimpleAir cannot evade claim preclusion by relying on continuation patents in this case.  Because continuation applications ***must be*** drawn to the same invention as their parent, assertions based on those claims necessarily arise from the same transaction or nucleus of operative fact.  *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014) ("A continuation application is 'a second application for the ***same invention*** claimed in a prior non-provisional application . . .'") (quoting MPEP § 201.07 (9th ed. Mar. 2014) (emphasis added); *Anascape, Ltd. v. Nintendo of Am.*

*Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (continuation claims must find support in original specification); *see also Medinol Ltd. v. Cordis Corp.*, 15 F. Supp. 3d 389, 404 (S.D.N.Y. 2014) (continuation claims necessarily "could have been made in the [parent] application"); *LendingTree, LLC v. Zillow, Inc.*, No. 3:10-CV-00439-FDW, 2014 WL 1309305, at *12 (W.D.N.C. Mar. 31, 2014) (same). That the claims of the '838 and '048 Patents issued a few days after SimpleAir initiated *SimpleAir II/III* provides it no cover from claim preclusion bar. Because the claims reflected in the '838 and '048 Patents are merely different articulations of the same claimed invention from the prior SimpleAir cases, claim preclusion applies. *Senju*, 746 F.3d at 1347; *Aspex Eyewear*, 672 F.3d at 1340; *see also Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2012 WL 850705, at *7 (N.D. Cal. Mar. 13, 2012) ("each claim [in a patent] represents merely different shades of the same invention").

> (b)  Having Failed To Exercise Reasonable Diligence In SimpleAir II/III, SimpleAir Is Precluded From Asserting The '838 and '048 Patent Now

Claim preclusion is particularly fair here because, unlike in *Senju* and *Aspex Eyewear*, SimpleAir could certainly have asserted the claims of the '838 and '048 Patents in the prior litigation. The Fifth Circuit, which supplies controlling law in this context, mandates that plaintiffs exercise reasonable diligence to ensure that the salient allegations and theories supporting their causes of action be timely asserted or they will be barred. *Senju*, 746 F.3d at 1348 (regional circuit law supplies the general framework for claim preclusion). Specifically, Fifth Circuit law provides that "[r]es judicata or claim preclusion bar all claims that were or could have been advanced in support of the cause of action adjudicated . . . not merely those that were actually adjudicated." *Langston v. Ins. Co. of N. Am.*, 827 F.2d 1044, 1047 (5th Cir. 1987). The Fifth Circuit has "voiced its intolerance for the splitting of a claim or cause of action into two suits as well as condemned the dilatory action of a plaintiff in failing to amend a pending action with the same factual basis as a

second filed suit."  *Id.* at 1048 (citing *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 834 (5th Cir. 1983)).

For example, in *Langston*, the plaintiff filed a state common law action for wrongful discharge while his complaint for age discrimination was pending with the Equal Employment Opportunity Commission (EEOC).  *Id.* at 1047.  The EEOC granted him a right-to-sue letter during the pendency of the first suit.  *Id.*  Rather than seeking to add the age-discrimination cause of action to the first suit, the plaintiff filed a new suit .  *Id.*  The district court held that the second suit was barred by res judicata (*i.e.*, claim preclusion), and the Fifth Circuit adopted the district court's opinion in full.  In so doing, the Court rejected the plaintiff's argument that he should be excused from res judicata because his age-discrimination cause of action did not arise until his received his right-to-sue letter in the midst of the first suit.  *Id.* at 1048.  The Court reasoned:

> ***Although it cannot be fairly said that Langston I advanced the age discrimination theory of the case which is alleged in Langston II, this does not mean that res judicata is inapplicable*** . . . . ***Res judicata or claim preclusion bar all claims that were or could have been advanced in support of the cause of action adjudicated in Langston I, not merely those that were actually adjudicated***.
>
> ***
>
> After removal of Langston I and receipt of the right-to-sue letter, plaintiff had a fair opportunity to raise the age discrimination claim in the already pending cause of action. Instead, plaintiff filed the case *sub judice* resulting in two separate suits arising out of substantially the same alleged set of facts, yet awaiting resolution by two different judges. ***Clearly, it is the prevention of this kind of claim splitting and "dilatoriness" which the doctrine of res judicata contemplates***

*Id.* (emphasis added).  The Court concluded: "Applying the principles of law to the facts of this case, the Court concludes that *Langston I* and *Langston II* are successive actions arising out of the same transaction or wrong and further that plaintiff could have, by amendment or consolidation, advanced his age discrimination allegations during the pendency of *Langston I* . . . ."  *Id.*

In this case, SimpleAir knew that the '838 and '048 patent claims were forthcoming from the USPTO and could have waited to bring *SimpleAir II/III* until the patents issued or, alternatively, it could have added the asserted patents to *SimpleAir II/III* without running afoul of the Court's scheduling order.   The USPTO issued both the notice of allowance and issue notification for both the '838 and '048 Patents ***before*** SimpleAir filed the operative Complaint (its First Amended Complaint) in *SimpleAir II/III* — indeed, the issue notification for the '838 Patent was recorded by the USPTO ***the very same day that SimpleAir initiated the litigation***.   *See* Section III.C *supra.*   As a result, the '838 Patent ***issued before SimpleAir filed its First Amended Complaint in SimpleAir II/III***, and the '048 Patent issued just days later.  Dkt Nos. 17, 23, 24.  At the time that the patents issued, SimpleAir had nearly a year under the Docket Control Order to amend its pleadings to add the continuation patents.  But, as in *Langston*, the "plaintiff, who controlled the tactical decisions in the contest between the parties" made no attempt to amend its claims to add the '838 or '048 Patents.  *Compare Langston*, 827 F.2d at 1048 *with* Dkts. 27-1, 30.  Thus, both Fifth Circuit and Federal Circuit law mandate that SimpleAir's "dilatoriness" bars its serial litigation.  *Id*.

The *Senju* dissent is also instructive here, and further illustrates how claim preclusion should bar this suit.  The *Senju* dissent would have allowed the patentee to assert its re-examined claims in a subsequent lawsuit because the patentee could not have feasibly asserted these claims in the first lawsuit, given the timing of when they issued.  *Senju*, 746 F.3d at 1354 n. 1 (O'Malley, J., dissenting) ("Importantly, neither the majority nor Apotex contends that Senju's reexamined *claims* could have been asserted in the original action.  Although Senju's reexamined claims issued before final judgment was entered in the first action, Senju did not have an opportunity to bring its reexamined claims in that case.  A judgment had been entered in the first litigation prior to the

issuance of Senju's reexamined claims.") (emphasis in original).   However, the *Senju* dissent **would have** applied claim preclusion if the patentee **could have** feasibly asserted its re-examined claims in the first lawsuit.   *See id.* ("If Senju's reexamined claims could have been brought in the original action, then traditional principles of claim preclusion would bar claims for past infringement, and the doctrine set forth in *Kessler v. Eldred,* 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907), might well bar claims of infringement with respect to actions occurring post-judgment . . ."); *see also id.* at 1355 ("The doctrine of claim preclusion applies in only two ways: (1) to prevent a party from relitigating claims that have already been resolved, and (2) **to bar a party from bringing certain claims that could have been brought in a prior lawsuit**.") (emphasis added).   This is exactly the case here.   SimpleAir could easily have brought the '838 and '048 Patents during the *SimpleAir II/III* litigation – the PTO provided the notice of allowance of both the '838 and '048 Patents before the lawsuit was initiated, the patent issued before SimpleAir voluntarily filed its First Amended Complaint, and both asserted patents issued well before the Court-imposed deadline for amending.   Therefore, claim preclusion bars SimpleAir's belated attempt to bring these claims in a subsequent lawsuit.   *See also Brain Life*, 746 F.3d at 1053 ("[C]laim preclusion bars both claims that were brought as well as those that **could have been brought**.") (emphasis in original); *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) ("Turning to the merits, the defense of claim preclusion will generally be available where the asserted claim was, **or could have been**, raised in a prior action between the parties which has been adjudicated on the merits.") (emphasis added).

3. <u>SimpleAir's Argument That Its New Complaint Raises An "Independent And Distinct Cause Of Action" Is Incorrect</u>

(a)  SimpleAir's Reliance On The *Kearns* and *Abbey* Decision Is Misplaced

Nothing in SimpleAir's Complaint or in the current legal landscape mandates a contrary result. In its Complaint, SimpleAir cites Federal Circuit precedent for the proposition that "[N]ormally when patents are not included in a suit they are not before a court and while preclusion may attach to certain issues, causes of action based on patents that are not included in a suit are ordinarily not captured, and therefore precluded, by judgments that pertain to other patents . . . ." Dkt. 1 at ¶ 6 (citing *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) and *Abbey v. Mercedes-Benz of N. Am., Inc.*, 138 F. App'x 304, 307 (Fed. Cir. 2005)). But the cases cited by SimpleAir, *Kearns* and *Abbey*, are facially distinguishable and do not address the situation presented here. *Kearns* and *Abbey* did not address a patentee's efforts to sustain serial litigation against an accused product by engaging in strategic prosecution of continuation applications. To the contrary, the patents that were allowed to proceed in the successive lawsuits in *Kearns* and *Abbey* were ***not continuations*** of the patents that were asserted in the first lawsuits.[7] Indeed, there is no suggestion that the "first lawsuit" patents and the "second lawsuit" patents in *Kearns* and *Abbey* were related in any way. In *Abbey*, the patent that was allowed to proceed in the second lawsuit bore no family relationship to the two patents that were litigated to final judgment in the first lawsuit, nor was there any allegation that the claimed inventions were the same.[8] In *Kearns*, "[t]he [trial] court did not identify the inventions claimed in any of the patents," and there is no indication of what the patent numbers even were. *Kearns*, 94 F.3d at 1554. Thus, these cases merely stand for the rule that ***unrelated*** patents will not ***ordinarily*** be deemed part of the same

---

[7] In addition, in *Kearns*, the prior action was dismissed for a failure to prosecute, which meant that there had been no determination on the merits of the plaintiff's claims.

[8] This is clear from the cover pages of these three patents, which are attached for reference. Exs. M - O. The Court may take judicial notice of these patent cover pages. 2 IP Litigation Guide: Patents & Trade Secrets § 18:2 (2016) ("U.S. patents are publicly available documents whose contents may be determined by resort to sources whose accuracy cannot reasonably be questioned . . . Judicial notice of U.S. patents is common.")

cause of action.  Such a rule does not, however, extend to a situation in which the patents in the successive suit are continuations of the patents that were litigated to judgment in prior suits.

To the contrary, the Federal Circuit made clear in *Abbey* (and subsequent case law) that the "general" rule that "each patent establishes an independent and distinct property right" has important limitations and that it is not intended to circumvent or replace the "transactional" test for claim preclusion.  *See Abbey*, 138 Fed. App'x at 306-307; *see also Senju*, 746 F.3d at 1349 (noting that while **"*[o]rdinarily*,** '[e]ach patent asserted raises an independent and distinct cause of action,'" the doctrine of claim preclusion barred plaintiff's assertion of reexamined claims) (quoting *Kearns*, 94 F.3d at 1555) (emphasis added).  Under the "transaction test" and in accordance with the prevailing case law, the Court should bar SimpleAir's attempt to assert claims from the '838 and '048 Patents—which are, by definition, directed to the ***same invention*** that Google has already been exonerated of infringing.  The law is clear that claim preclusion forbids a patentee from asserting one claim of its patent in a lawsuit and then bringing a successive suit on a different claim from that same patent.  *See, e.g*, *Hemphill v. Kimberly-Clark Corp.*, 335 F. App'x 964, 965 (Fed. Cir. 2008) ("the doctrine of res judicata bars a subsequent lawsuit on a different claim of the previously litigated patent because all claims of the patent should have been asserted in the first lawsuit . . . ."); *Adaptix*, 2015 WL 4999944 at *5-6.  In other words, "all claims of a patent" that could have been asserted against the accused infringer must be brought in a single action.  *Brain Life*, 746 F.3d at 1053; *Adaptix*, 2015 WL 4999944 at *5-6.  Judicial efficiency and fairness mandate that "a patentee sue an alleged infringer for infringement of all pertinent claims of her patent at one time . . . rather than attempting to litigate each claim separately." *Hemphill*, 335 F. App'x at 965.  This requirement has been extended by the Federal Circuit to not only bar assertion of patent claims that existed at the time the litigation was initiated, but even patent claims

that were later acquired as a result of subsequent prosecution.  *Aspex Eyewear*, 672 F.3d at 1340-41; *Senju*, 746 F.3d at 1352-53.

(b)      The Continuation Patents At Issue Should Be Deemed Part Of The<br/>Same Cause Of Action As Their Parent Patents

To the extent SimpleAir's Complaint implies a belief that *SimpleAir IV* is exempt from the mandate of *Aspex Eyewear*, *Senju*, and *Hemphill* because SimpleAir elected to pursue the claims of the '838 and '048 Patents as continuation applications rather than as part of (any of) the parent application(s), it cites no law (or logic) for that position.  *Compare Medinol*, 15 F. Supp. 3d at 404 (holding that Cordis's equitable defenses to infringement of the parent patent applied equally to the plaintiff's continuations; stating: "While continuation patents can add new claims, because those claims can only be based on the original disclosures and specifications stated in the first application, *they could have been made in that first application*.") (emphasis added); *LendingTree*, 2014 WL 1309305 at *12 (same).  To the contrary, in addressing whether a patentee was entitled to bring a subsequent suit based on new claims emerging from reexamination proceedings, the Federal Circuit affirmed that determining whether "the same patents are involved in both suits" focuses "on whether it is the same patented invention" that is asserted and only "derivatively on whether the patent claims asserted in each of the suits are the same or substantially the same."  *Senju*, 746 F.3d at 1350-51.  Here, since the '838 and '048 Patents are continuations of the previously-adjudicated '914 Patent and are co-continuations of the previously-adjudicated '279 and '154 Patents, it is indisputable that their claims are directed to the "same patented invention" as was at issue in *SimpleAir I* and again in *SimpleAir II/III*.  By definition, to be patentable, the claims of the '838 and '048 Patents must be directed to the "same invention" as disclosed in their common parent application.  *Antares*, 771 F.3d at 1358 ("A continuation application is 'a second application for the *same invention* claimed in a prior non-provisional

18

application . . .'") (quoting MPEP § 201.07 (9th ed. Mar. 2014) (emphasis added).[9]  Thus, the

asserted patents in this and the prior litigations "represent merely different shades of the same

invention," and do not give rise to legally-separable property rights (or causes of action).  *Compare*

37 C.F.R. § 1.141(a) ("Two or more independent and distinct inventions may not be claimed in

one national application . . .") *with Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012

WL 850705, at *7 (N.D. Cal. Mar. 13, 2012) ("each claim [in a patent] represents merely different

shades of the same invention").

In other words, the relationship between parent claims and continuation claims is

conceptually identical to the relationship between claims within a single patent — in both cases,

the various claims merely recite different aspects or shades of the same invention.  In either case

the claim preclusion doctrine should bar a successive suit, given that the successive suit necessarily

asserts different shades of the "same invention.[10]"

---

[9]  Were they not, the claims would be invalid for myriad of reasons ranging from double-patenting
– which SimpleAir was only able to prosecute around by filing terminal disclaimers – to lack of
written description and/or art-based invalidity.  *See, e.g.*, Exs. A & B (terminal disclaimer filed
with the patent applications);  Ex. P (inventor declaration swearing behind prior art);  *Geneva
Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377-78 (Fed. Cir. 2003) ("'obviousness-
type' double patenting [] prevent[s] issuance of a patent on claims that are nearly identical to
claims in an earlier patent . . . a terminal disclaimer may restrict the slight variation to the term of
the original patent and cure the double patenting rejection.").  While Google retains the right to
demonstrate that the asserted claims are nonetheless invalid, the patentee's filing of terminal
disclaimers during prosecution necessarily means that the asserted patents are either precluded
based on the prior litigation or invalid for double-patenting.

[10]  There are a small number of non-binding District Court cases that have concluded that claim
preclusion does not necessarily attach to continuation patents based on adjudication of their parent
patents.  All but one of the cases pre-date the Federal Circuit's *Senju* decision, which expressly
held that different patent claims do *not* always constitute unique causes of action for the purpose of
claim preclusion.  *Senju*, 746 F.3d at 1350-51.  In the absence of this guidance, relying exclusively
on *Kearns*, some older cases found, without analysis, that each asserted patent is necessarily a
distinct cause of action.  *Trading Tech Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011
3157304, at *4 (N.D. Ill. Jul. 26, 2011); *SciMEd Life Sys. v. Adv. Cardiovascular Sys., Inc.*,
No. C 99-0112, 1999 WL 33244568 (N.D. Cal. May 17, 1999).  This premise has since been
rejected by the Federal Circuit.  *Senju*, 746 F.3d at 1350-51.  Only one case, *Ferring BV v. Actavis,*

(c)     The Policies Underlying The "Transaction Test" Underscore The
Justification For Dismissal Of *SimpleAir IV*

The Federal Circuit has also made clear that "how the general rule [that 'each patent asserted raises an independent and distinct cause of action'] is to be understood" must be guided by the "underlying policies that the doctrine of claim preclusion is designed to further" — *i.e.*, "efficiency and finality." *Senju*, 746 F.3d at 1348-49.   Thus, the Federal Circuit has counseled courts and parties to look to the "approach in the Restatement (Second) of Judgments, which states that a cause of action is defined by the transactional facts from which it arises and the extent of the factual overlap," to determine whether the same cause of action is raised in two successive suits. *Id*.; *see also Acumed*, 525 F.3d at 1323.   As explained in the Restatement:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

---

*Inc.*, addresses the Federal Circuit's *Senju* opinion.  In *Ferring*, the Nevada District Court did not apply the transaction test, but simply held that the "exercise of cautious restraint" militated against the automatic extension of *Senju's* holding, which related directly to new claims in a reexamined patent, to continuations.  *Ferring*, 2014 WL at *2-3.  The Nevada District Court left open the issue of whether substantially similar claims in related patents could form a common nucleus of operative fact for claim preclusion purposes (because the parties had not raised that argument). Thus, neither *Ferring* nor any of the older cases address the specific arguments raised herein, including the argument that since continuation applications are necessarily for the same invention and their claims necessarily could have been included in the prior application, they must be part of the same transaction / nucleus of operative fact as their parents for the purpose of claim preclusion. *Antares Pharma*, 771 F.3d at 1358; *Medinol*, 15 F. Supp. 3d at 404; *Lending Tree*, 2014 WL 1309305 at *12.  Moreover, none of these cases applied Fifth Circuit precedent to the claim preclusion issue.

*Acumed*, 525 F.3d at 1323-24 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24) (1982) (Court's ellipses)).

All of the factors enumerated in the Restatement's "pragmatic" approach militate towards finding preclusion of SimpleAir's successive suit.  For example, SimpleAir's assertion of the '838 and '048 Patents in this case is clearly "related in time, space, origin, [and] motivation" to its previous assertion of the '914, '279, and '154 Patents in prior litigation.  The same accused product is at issue in this litigation as in *SimpleAir I* and *SimpleAir II/III*, thus making the claims not only related, but identical in "time, space, and origin."  Similarly, SimpleAir's asserted rights in this case (the claims of the asserted patents) originate from the same parent provisional application, filed by SimpleAir nearly two decades ago, and are supported by the same specification as the rights adjudicated in the prior cases.  *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (continuation claims must find support in original specification); *see also Medinol*, 15 F. Supp. 3d at 404 (continuation claims necessarily "could have been made in the [parent] application"); *Lending Tree*, 2014 WL 1309305 at *12 (same).

Moreover, SimpleAir's claims in this case would certainly "form a convenient trial unit" with the previously-asserted claims since, as discussed above, they are all "merely shades" of the same claimed invention.  As stated in comment (b) to the Restatement: "Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first.  ***If there is a substantial overlap, the second action should ordinarily be held precluded***." RESTATEMENT (SECOND) OF JUDGMENTS, § 24, cmt. (b) (emphasis added).  Needless to say, asserting parent claims and continuation claims against the same accused product easily satisfies this test.  It is hard to think of two situations that would have a greater "overlap" in terms of trial

witnesses and proofs — a fact that SimpleAir acknowledges and even touts in its Complaint.  *See* Dkt. 1, ¶ 9.

Finally, litigating parent and continuation claims together "conforms to the parties' expectations or business understanding or usage."  Put differently, it does not comport with reasonable expectations or usage for a patentee to file serial lawsuits against the same product on the same continuation chain, with the number of suits limited only by the number of continuation patents that it can serially file over a 20-year timespan.  This is particularly true because the decision to include patent claims in a parent or continuation patent is an election made entirely at the patentee's discretion.

By contrast, allowing SimpleAir to continue asserting its continuation patents in serial cases against Google would contradict the "pragmatic" approach mandated by the Restatement.  It would frustrate the interests of finality and judicial economy that claim preclusion is supposed to promote.  *Stoller v. Hyperstealth Biotechnology Corp.*, 131 F. App'x 280, 282 (Fed. Cir. 2005) ("claim preclusion . . . promotes judicial economy by preventing needless litigation"); *New Jersey Inst. of Tech. v. Medjet, Inc.*, 47 F. App'x 921, 924 (Fed. Cir. 2002) (claim preclusion promotes "the interests of judicial economy and finality.")  If claim preclusion were no bar to SimpleAir's successive parent/continuation litigation, then SimpleAir could simply continue to split its claims between any number of continuation applications and thereby give itself a nearly infinite number of chances to finally succeed in a lawsuit against Google.  Such a ruling would render the doctrine of claim preclusion a dead letter, because any patentee could dodge this doctrine by simply splitting his claims between different continuation applications.  This would greatly frustrate the interest of finality, as litigation would never be "final" so long as one continuation patent remained unasserted.  It also would greatly frustrate the interest of judicial economy, because courts would

need to adjudicate a successive string of lawsuits.  And it would even frustrate administrative economy, since patentees would be incentivized to file a successive string of applications before the USPTO, rather than consolidating their claims within a single application.

SimpleAir's series of lawsuits is a case study for these problems and inefficiencies.  This is the fourth lawsuit that SimpleAir has brought against Google against GCM in this Court, all raising parts of the same chain of continuation patents.  The continuation patents asserted in this case are subject to terminal disclaimers (Dkt. 1, Exs. A-B), accentuating how they are "nearly identical to" and just a "slight variation" of the claims in SimpleAir's prior patents.  *Geneva Pharm.*, 349 F.3d at 1377-78 (finding that a terminal disclaimer is required to forestall a rejection for nonstatutory double-patenting "of claims that are nearly identical to claims in an earlier patent").  Should Google be forced to litigate this suit on the merits, SimpleAir might then bring a fifth, or sixth, or seventh lawsuit, raising yet more continuation patents that are just "slight variations" of the preceding patents as they issue, many years after the parent application was filed. The policies behind claim preclusion cannot countenance this result.

### B.  SimpleAir's Post-Judgment Infringement Claims Should Be Dismissed Under the *Kessler* Doctrine

As for SimpleAir's post-judgment infringement claims — *i.e.*, infringement claims based on Google activities that post-dated final judgment in both prior SimpleAir cases — these infringement claims should be dismissed under the *Kessler* doctrine.  The Supreme Court established the *Kessler* doctrine to serve as a flexible gap-filling doctrine that shields adjudged non-infringing products from successive, harassing litigation by the patentee, even when claim preclusion would not.  *Brain Life*, 746 F.3d at 1056 ("The *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged ***non-infringer*** to avoid repeated

harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.") (emphasis in original).

Thus, in *Brain Life*, the accused infringer defeated a prior infringement suit by the patentee, and then continued manufacturing the same products that had previously been accused.  The Federal Circuit held that claim preclusion did not apply to accused activities that post-dated final judgment in the first suit, *id.* at 1054, but that the *Kessler* doctrine did shield these activities.  *Id.* at 1058 ("Brain Life's predecessor-in-interest asserted all of the '684 patent claims against Elekta in the MIDCO Litigation.  While MIDCO ultimately abandoned the method claims prior to trial, it could have continued to assert those claims.  Thus, once the accused devices in the MIDCO Litigation were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, Elekta was free to continue engaging in the accused commercial activity as a non-infringer.")

The same logic applies here.  GCM has repeatedly been found not to infringe SimpleAir's patent rights, in three prior cases that collectively spanned five years, three jury trials, and one Federal Circuit decision.  SimpleAir's continued, serial assertion of patent claims for the "same invention" against the same product (GCM) is precisely the type of serial, harassing litigation that the *Kessler* doctrine is designed to prevent.  *Brain Life*, 746 F.3d at 1056; *SpeedTrack*, 791 F.3d at 1326; *MGA*, 827 F.2d at 734-35.  Indeed, it would be inconsistent with  *Brain Life* to hold that claim preclusion shields pre-judgment activities but that the *Kessler* doctrine does **not** "fill the gap" to shield these same activities post-judgment.

SimpleAir might argue that the *Kessler* doctrine should not apply because the patents in this lawsuit are not the same patents that GCM was found not to infringe.  But, as discussed above, the patents in this lawsuit are **continuations** of the patents that GCM was found not to infringe.

They cover the "same invention" as the patents that GCM was found not to infringe.  *Antares*, 771 F.3d at 1358 (citing MPEP § 201.07 (9th ed. Mar. 2014)).  And while it is true that previous *Kessler* doctrine cases have involved successive assertions of the same patent, no court has ever held that the *Kessler* doctrine should ***not*** apply to bar successive assertions of related continuation patents, which include claims for the same invention.  Google is seeking a commonsense application of the *Kessler* doctrine to bar successive litigation against Google's continued provision of the GCM services and system — previously exonerated of infringement — to application developers and the public.  Fundamentally, *Kessler* forecloses a patentee from bringing successive litigation against an adjudged non-infringing product; this rule should apply whether the successive litigation asserts claims from the original patent or continuation claims drawn to the "same invention."  In either situation, the patentee is unfairly continuing to assert its claimed invention against products that were already found not to infringe multiple times.

The policy underlying the *Kessler* doctrine — that makers and users of the adjudged non-infringing products should be free from continued harassment ***by the patentee*** **—** underscores the appropriateness of its application to this case.  *See, e.g., Kessler v. Eldred*, 206 U.S. 285, 289 (1907) ("it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, ***be let alone by Eldred, and it is Eldred's duty to let them alone***.") (emphasis added); *MGA*, 827 F.2d at 734-35 ("Since the accused machines here are admittedly the same in both suits, it is LaSalle Tool's right that the accused machines be freely traded ***without interference from MGA***.") (emphasis added).  It would vitiate the *Kessler* doctrine if a patentee could simply prosecute a series of continuation patents and repeatedly assert those continuation patents against the same products.  This would allow for the very sort of serial, harassing litigation by the patentee that the *Kessler* doctrine is designed to prevent.  Makers and users of the adjudged

non-infringing products would never be free from harassment by the patentee, no matter how many times the products were found to be non-infringing, for the patentee could just keep filing and prosecuting new continuation applications and asserting these continuations serially against makers and users of the product.

The *Kessler* doctrine should not be given a crabbed reading that would allow for this perverse result.  Instead, in keeping with the purposes of the doctrine, it should be applied to bar SimpleAir from serially asserting continuations of the same patents that GCM has repeatedly been found not to infringe.  In short, Google simply asks the doctrine be applied in an equitable manner that upholds "the right of the adjudged non-infringing manufacturer to sell his wares freely" and the right of product users to be "left alone."  *SpeedTrack*, 791 F.3d at 1326 ("*Kessler* emphasized the right of the adjudged noninfringing manufacturer to 'sell his wares freely,' and the patent owner's corresponding duty to leave that manufacturer's customers alone.").

### C.     If Claim Preclusion Did Not Shield Pre-Judgment Activity, Then the *Kessler* Doctrine Should Be Applied to Shield Pre- and Post-Judgment Activity Alike

The flexible, gap-filling nature of the *Kessler* doctrine is also relevant in another context.  Namely, if the Court were to hold that claim preclusion does ***not*** apply to shield Google's pre-judgment activity, then the *Kessler* doctrine should fill this gap as well.  In other words, if claim preclusion were found not to apply to Google's pre-judgment activities, then the *Kessler* doctrine should apply to shield both pre- and post-judgment activities alike. *See*, *e.g.*, *Adaptix*, 2015 WL 4999944 at *8 ("Essentially, Kessler held that once an accused product is deemed non-infringing, it maintains that status from the time of final judgment forward.").

This conclusion flows logically from *Brain Life*'s statement that "[t]he *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged ***non-infringer*** to avoid repeated harassment for continuing its business as usual post-final judgment in a patent

action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056 (emphasis in original). The particular "gap" that the *Kessler* doctrine filled in *Brain Life* was a temporal gap — claim preclusion applied only to pre-judgment activities, so the *Kessler* doctrine filled the temporal gap and shielded post-judgment activities. *Id.* at 1058. But *Kessler* can also fill other doctrinal gaps. For example, if the Court were to hold that the continuation claims in this case do not ***quite*** raise the same cause of action as the parent claims in the prior cases — such that SimpleAir could escape claim preclusion on a technicality — the *Kessler* doctrine would fill this doctrinal gap and bar SimpleAir's infringement case across the board. It bears repeating that *Brain Life* set forth *Kessler*'s gap-filling nature in broad equitable terms, stating that the doctrine "fills the gap between these [other] preclusion doctrines, [] allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action ***where circumstances justify that result***." *Brain Life*, 746 F.3d at 1056 (bolded text added, italics in original). Here, "circumstances justify" that SimpleAir not be allowed to assert the same invention[11] against GCM in a fourth successive lawsuit, even if SimpleAir could escape claim preclusion by splitting its patent claims between multiple applications filed and prosecuted over many years and asserting the resulting patents *seriatim*. Such serial litigation is precisely the sort of "repeated harassment" against "an adjudged non-infringer" that the *Kessler* doctrine was designed to prevent. *Brain Life*, 746 F.3d at 1056. Accordingly, if the Court were to find that claim preclusion does not apply to Google's pre-judgment activities, Google respectfully requests (in the alternative) that the *Kessler* doctrine be applied to shield pre- and post-judgment GCM activities alike.

---

[11]  *Antares*, 771 F.3d at 1358 ("A continuation application is 'a second application for the same invention claimed in a prior nonprovisional application . . .'") (quoting MPEP § 201.07).

## VI.   CONCLUSION

For the foregoing reasons, Google respectfully requests that this lawsuit be dismissed pursuant to claim preclusion and the *Kessler* doctrine.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

DATED: May 17, 2016

By
_/s/ Michael D. Powell_
_____

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven
    charlesverhoeven@quinnemanuel.com
Michael D. Powell
    mikepowell@quinnemanuel.com
Michelle A. Clark
    michelleclark@quinnemanuel.com
James Judah
    jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Patrick D. Curran
    patrickcurran@quinnemanuel.com
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joshua L. Sohn
    joshuasohn@quinnemanuel.com
Deepa Acharya
    deepaacharya@quinnemanuel.com
777 6th St. NW. 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8175

29

Facsimile: (202) 538-8100

*Attorneys for Defendant Google Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document on May 17, 2016.

*/s/  Michael D. Powell*
Michael D. Powell