IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SIMPLEAIR, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 2:16-cv-388 |
| v. | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| GOOGLE INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>REPLY BRIEF IN SUPPORT OF GOOGLE'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I.    Introduction ........................................................................................................................1

II.   SimpleAir's Fourth Lawsuit Against Google Is Barred By Claim Preclusion ......................3

      A.    The Transaction Test Forecloses *SimpleAir IV* ......................................................3

            1.    *Kearns* Does Not Impose A Blanket Rule Against The Application
                  of Claim Preclusion To Serial Patent Cases ....................................................4

      B.    SimpleAir's Characterization Of "Continuation Patents And Double
            Patenting" Does Not Save It From Claim Preclusion .................................................6

      C.    Claim Preclusion Applies Because The Patents Raise The Same Cause Of
            Action As The Prior SimpleAir Patents And Could Have Been Asserted In
            The Prior Cases ..........................................................................................................9

III.  SimpleAir's Infringement Claims Are Barred By the *Kessler* Doctrine ............................10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abbey v. Mercedes Benz,*
  138 Fed. Appx. 304 (Fed. Cir. 2005)..................................................................................5, 6

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
  672 F.3d 1335 (Fed. Cir. 2012)........................................................................................5, 6, 8

*Brain Life, LLC v. Eleckta, Inc.,*
  746 F.3d 1045 (Fed. Cir. 2014)..............................................................................................10

*Ferring B.V. v. Actavis, Inc.,*
  2014 WL 3697260 (D. Nev. Jul. 23, 2014) ............................................................................6

*Gillig v. Nike, Inc.,*
  602 F.3d 1354 (Fed. Cir. 2010)................................................................................................9

*Hakim v. Cannon Avent Group, PLC,*
  479 F.3d 1313 (Fed. Cir. 2007)................................................................................................7

*Hemphill v. Kimberly-Clark Corp.,*
  335 F. App'x 964, 965 (Fed. Cir. 2008) .................................................................................2

*Houston Prof. Towing Ass'n v. City of Houston,*
  812 F.3d 43 (5th Cir. 2016) .....................................................................................................3

*Kearns v. Gen. Motors Corp.,*
  94 F.3d 1553 (Fed. Cir. 1996).......................................................................................1, 4, 5

*Senju Pharm. Co. v. Apotex, Inc.,*
  746 F.3d 1344 (Fed. Cir. 2014)........................................................................................5, 6, 8

### **Statutes**

35 U.S.C.§ 101 ..................................................................................................................................6

### **Miscellaneous**

MPEP § 201.07 (9th Ed. Mar. 2014) ..........................................................................................6, 7

Restatement (Second) of Judgments § 24.................................................................................3, 4

**I.      Introduction**

SimpleAir's position is that it may bring — unchecked — as many separate lawsuits against Google and Google's Cloud Messaging service as it has continuation patents. In support of this position, SimpleAir misapplies the *Kearns v. General Motors Corp.* decision to suggest a bright-line rule: namely, that different patents will *always* raise different causes of action, and therefore successive assertion of different patents can *never* be barred by claim preclusion. But SimpleAir is wrong. There is no such rule; *Kearns* does not address the situation presented here and *Kearns'*s progeny make clear that application of claim preclusion is governed by the transaction test — a test that SimpleAir does not address or apply in its Opposition.

Indeed, *none of the cases* cited by SimpleAir stand for the proposition that *Kearns* abrogates the transaction test, which both the Fifth and Federal Circuits have held governs the determination of whether serial litigation is foreclosed by claim preclusion. Nor did *Kearns* itself address or apply the transaction test to the facts before it — which related to the preclusive effect of a non-merits-based dismissal of unrelated patent claims. *Kearns* did not involve continuation patents or consider whether claim preclusion could bar a second lawsuit involving a continuation of a patent from a prior lawsuit. Thus, contrary to SimpleAir's assertion, *Kearns* is not applicable and certainly not dispositive of the issues presented in Google's Motion to Dismiss.

In this action, SimpleAir asserts two continuation patents that are each terminally disclaimed to the previously-litigated parent patents — all of which stem from the same specification and claim priority to the same provisional application filing date of January 26, 1996. As Google demonstrated in its opening brief, there is no logical distinction between different claims of a single issued patent and those of multiple continuation patents. This is because all continuation claims — *by definition* — could have been included in a single patent application. This simple truism dooms SimpleAir's latest infringement action — it is paradigmatic that a

patentee must "sue an alleged infringer for infringement of all pertinent claims of her patent at one time regarding the same products rather than attempting to litigate each claim separately."[1] Thus, if a patentee cannot serially assert different claims from a single issued patent, then neither should a patentee be able to serially assert parent and continuation claims simply because they are spread across two or more separately-enumerated patents. A contrary result would eviscerate the "transaction test" and lead to an unintended windfall for patentees with the resources and wherewithal to prosecute several continuation applications to issuance.

SimpleAir offers no logical reason why its strategic decision to split its claims between a parent and several continuation applications (as opposed to putting all claims in a single application) should allow it to escape claim preclusion. To the contrary, the continuation claims in this case are ***terminally disclaimed***, meaning that they are "nearly identical to" the claims from their parent application. Successive assertions of a parent patent and a ***terminally-disclaimed*** continuation patent are even more clearly part of the same cause of action under the transaction test, and the Federal Circuit has never held otherwise.

SimpleAir's attempt to brush aside Google's arguments under the *Kessler* doctrine also misses the mark. Specifically, SimpleAir attempts to limit the doctrine to the specific facts presented by a single case (*Kessler*) — ignoring both the contours of the doctrine as explained by the Supreme Court and the Federal Circuit as well as the instructive, binding progeny that follow *Kessler* and hold that it is ***not limited to the specific asserted claims*** at issue in the prior litigation. Recently, the Federal Circuit in *Brain Life* expressly held that to fulfill the purpose of *Kessler*, the doctrine necessarily applies to foreclose serial infringement suits "where all of the claims were ***or***

---

[1] *Hemphill v. Kimberly-Clark Corp.*, 335 F. App'x 964, 965 (Fed. Cir. 2008). Notably, SimpleAir fails to consider or even cite to the *Hemphill* decision in its opposition. And given its acquiescence to the notion that the claims of a continuation patent necessarily could have been included in the parent patent, SimpleAir's attempt to distinguish the present case from this general rule would be futile.

*could have been asserted* against . . . the accused devices." 746 F.3d 1045, 1058 (Fed. Cir. 2014) (emphasis added). The *Kessler* doctrine provides an independent, unrefuted basis for dismissing SimpleAir's fourth case against Google. Accordingly, this action should be dismissed.

## II. SimpleAir's Fourth Lawsuit Against Google Is Barred By Claim Preclusion[2]

### A. The Transaction Test Forecloses *SimpleAir IV*

There is no dispute between the parties or the Federal and Fifth Circuits that the sole, dispositive test for whether claim preclusion applies is the "transaction test" from the Restatement (Second) of Judgments. *Compare* Mot. at 6 *with* Opp. at 17. If the "same transactional facts" are at issue in this case and SimpleAir's prior suits, then this case is barred. *Houston Prof. Towing Ass'n v. City of Houston*, 812 F.3d 43, 447 (5th Cir. 2016) ("The transactional test focuses on whether the two cases are based on the same nucleus of operative fact."). As Google previously explained — and SimpleAir *never disputes* — all of the factors enumerated by the Restatement for adjudging identity of operative facts indicate that SimpleAir's claims against Google's GCM services based on the '838 and '048 Patents are part of the same nucleus of operative fact, and therefore are part of the same cause of action, as its claims based on the related parents and co-continuations that SimpleAir asserted in its three prior lawsuits. *See* Mot. at 20-22. SimpleAir itself alleges that its current claims against Google's GCM services are heavily-dependent on the same facts, witnesses, and proof as its previous three cases. Dkt. 1 at ¶¶ 9, 14, 17, 22. The "relatedness in time, space, origin, and motivation" of the factual predicates for SimpleAir's claims in this and the prior litigations weigh heavily in favor of finding claim preclusion, as does

---

[2] In its "Summary of the Cases" section, SimpleAir makes a number of inaccurate and irrelevant points regarding the prior litigation, including that the Federal Circuit's decision in *SimpleAir I* should "have no effect" on any of SimpleAir's subsequent claims. The Federal Circuit decision effectively forecloses SimpleAir's new infringement theories both under the doctrines of claim and issue preclusion because it found that SimpleAir's invention (and therefore the scope of its patent protection) is limited to a system/method that Google's GCM services simply do not use. *SimpleAir I and SimpleAir II/III* foreclose any further litigation by SimpleAir against GCM based on this family of patents — and, as SimpleAir points out in its brief, Google has brought a declaratory relief action against a new patent recently issued to SimpleAir seeking judgment to that effect.

the fact that the claims SimpleAir has elected to assert serially could and would have formed a "convenient unit" for trial purposes. RESTATEMENT (SECOND) OF JUDGMENTS § 24, cmt (b).

        1.    *Kearns* Does Not Impose A Blanket Rule Against The Application of Claim Preclusion To Serial Patent Cases

SimpleAir does not address the controlling Restatement factors, and instead urges the Court to adopt a blanket rule that "claim preclusion applies only if it's the same patent." Opp. at 6. SimpleAir's position is supported by no logic or analysis — but instead relies on a single quote, taken out of context, from the Federal Circuit's 1996 opinion in *Kearns v. Gen. Motors Corp.*, wherein the Court stated that "each patent asserted raises an independent and distinct cause of action." 94 F.3d 1553, 1555-56 (Fed. Cir. 1996). At issue in *Kearns* was whether res judicata could be "based on the involuntary dismissal of an infringement action . . . [based on the plaintiff's] failure to comply with certain deadlines and orders of the court." *Id*. at 1554. In finding that Dr. Kearns was not precluded from bringing suit based on previously-unasserted patents, the Federal Circuit reasoned that "there was no adjudication of the merits" in the prior litigation; "the dismissal was on procedural grounds preceded by the district court's refusal to permit Dr. Kearns, appearing *pro se*, to amend his complaint to add other patents;" and neither "court made any substantive determination with respect to any patent or accused device" or "identif[ied] the inventions claimed in any of the patents." *Id*. at 1554-55. Under these unique circumstances, the Federal Circuit concluded that the first court's dismissal of "Kearns' complaint on procedural grounds" should not "extinguish his substantive patent rights that were not before it." *Id*. at 1556. SimpleAir — who is neither proceeding *pro se* nor sought leave to assert the '048 and '838 Patents in the prior litigation — hardly presents the same balance of equities that was addressed in *Kearns*. *Cf. id*. at 1556 (claim preclusion requires that "the interest of justice is not disserved by applying res judicata" and that the plaintiff had "a full and fair opportunity to litigate

4

the precluded subject matter"). SimpleAir's selective quote from *Kearns*, which it repeats in its brief, does not absolve SimpleAir of the effects of the transaction test.

Indeed, nine years after *Kearns*, in *Abbey v. Mercedes Benz*, the Federal Circuit clarified that "when [unlike in *Kearns*] a first lawsuit involving the same parties is finally adjudicated on the merits, the doctrine of claim preclusion may bar a second lawsuit on the same cause of action." 138 Fed. Appx. 304, 307 (Fed. Cir. 2005). Under such circumstances, the Federal Circuit "has endorsed the transaction approach for the analysis" of whether claim preclusion applies. *Id*. *Abbey* expressly noted that *Kearns* did not adopt a blanket rule but, instead, "provides that ***normally*** when patents are not included in a suit, they are not before a court, and while preclusion may attach to certain issues, causes of action based on patents that are not included in a suit are ***ordinarily*** not captured, and therefore precluded, by judgments that pertain to other patents." *Id*. at 307 (emphasis added).[3] Then, in 2012, in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, the Federal Circuit affirmed a lower court's finding that the patent claims asserted by the plaintiff – though they were different from the claims in the prior litigation and did not even exist at the time of the prior litigation – "relate to the same set of transactions as those litigated in the [prior] California Actions," thus justifying the application of claim preclusion. 672 F.3d 1335, 1341 (Fed. Cir. 2012).

Similarly, in *Senju*, the Federal Circuit upheld a finding of claim preclusion based on re-examined patent claims. Again, *Senju* emphasized that "the general rule of res judicata applies to repetitious suits involving the same cause of action," which is assessed based on "the transactional facts from which it arises and the extent of factual overlap." 746 F.3d 1344, 1348-49 (Fed. Cir. 2014). *Senju* also "considered whether the same patents are involved in both suits" — and

---

[3] As in *Kearns*, the Federal Circuit in *Abbey* ultimately concluded that Mr. Abbey's claims based on one of his patents (which, notably, was not a continuation or related in any way to his previously asserted patents), which he had unsuccessfully attempted to add to the prior suit, was not barred. *Id*. at 307.

expressly concluded that the "general rule" established by *Kearns* that "each asserted patent raises an independent and distinct cause of action" depends on "***whether it is <u>the same patented invention</u>*** [at issue] and only derivatively on whether the patent claims asserted in each of the suits are the same or substantially the same."  746 F.3d at 1351 (emphasis added).  Thus, SimpleAir's argument that "Google does not cite a single case in which a court determined whether a subsequent suit was precluded by analyzing whether the 'same invention' was asserted" is incorrect, and its advocacy of a blanket rule against claim preclusion in serial patent cases ignores *Abbey*, *Senju*, and *Aspex*.  Opp. at 15.[4]  Having failed to meaningfully rebut Google's analysis of the transaction test factors or show any blanket exception to the guiding principle of claim preclusion, SimpleAir is barred from re-urging its cause of action against Google for a fourth time.

> **B.    SimpleAir's Characterization Of "Continuation Patents And Double Patenting" Does Not Save It From Claim Preclusion**

SimpleAir's argument that *Senju's* holding should not apply to continuation patents because of differences in the prosecution process is equally unpersuasive.  Opp. at 9-11, 15. Because every continuation claim could have been included in the parent application, there is no meaningful distinction between different claims of a single patent and different claims in a parent and continuation.  In fact, the framework of the Patent Laws directs the PTO to issue only ***one patent per invention***.  35 U.S.C.§ 101; MPEP §  804.02 ("35 U.S.C. 101 prevents two patents from issuing on the same invention.").  That same framework also directs that a "[a] continuation application is ***a second application for the same invention*** claimed in a prior non-provisional

---

[4]  SimpleAir's suggestion that "several district court cases . . . have applied *Kearns* to allow a subsequent suit on a continuation patent" similarly ignores the Federal Circuit's intervening guidance in *Senju*.  Opp. at 13. As SimpleAir acknowledges, the cases it located were cited in Google's Motion, which explained that: (i) all of the cases except *Ferring v. Actavis* preceded the Circuit's guidance in *Senju*; (ii) none of the cases actually examined whether the "same patented invention" was at issue as *Senju* mandated; and (iii) none of the cases applied the transaction test in any substantive manner.  Opp. at 13.

6

application. . ." MPEP § 201.07 (9th Ed. Mar. 2014) (emphasis added).[5] The way to reconcile these provisions is to deem each patent issuing on a "continuation application" to be the *same patent* as its parent. Since it is undisputed that SimpleAir is precluded from serially asserting claims from the same patent, its decision to split its claims into several continuation applications (rather than putting them in a single application like it could have) was merely a prosecution strategy decision — not an escape-hatch from claim preclusion. *See* Mot. at 11, 19.

The differences that SimpleAir identifies between continuation and reexamined patents do not undermine the conclusion that, substantively, both are the "same patent" for claim preclusion purposes. The superficial procedural distinctions between continuation patents and reexamined patents — *e.g.*, "a continuation application requires its own filed application . . . that goes through its own independent prosecution" (Opp. at 9); "the application is subject to its own . . . fees;" (*id.*); and continuation prosecution "does result in the issuance of a new patent" (*id.* at 15) — are immaterial as to whether they are drawn to the same transaction and therefore present one cause of action that cannot be split up and serially litigated. Indeed, different claims from a single application are independently evaluated, and it is common for the PTO to allow some claims while rejecting others. Similarly, that a continuation may have facially broader claims than its parent, just like independent claims within a single patent may be broader or narrower in scope relative to each other, does not change the fact that continuation claims are limited by the specification, "must not include any subject matter which would constitute new matter if submitted as an amendment to the parent," and are therefore part of the same cause of action. MPEP § 201.07.[6] Thus, like

---

[5] SimpleAir points out that the "same invention" language was changed in the current, November 2015 revision of the MPEP. Opp. at 9 fn. 6. But the "same invention" language was present in the versions of the MPEP that existed when the '838 and '048 Patents were being prosecuted in 2013-2014.

[6] *Hakim v. Cannon*, relied on by SimpleAir, is instructive. Opp. at 9, 15. There, the Federal Circuit rejected the patentee's attempts to broaden his claims through a continuation application to recapture claim scope the patentee had given up during prosecution of the parent application. 479 F.3d at 1317-18.

reexamined claims, continuation claims fall within the holdings of *Senju* and *Aspex*.

SimpleAir's suggestion that the terminal disclaimers it submitted in the prosecution of the patents-in-suit militate against claim preclusion is also wrong. Opp. at 9-11. SimpleAir makes much of the fact that while "not patentably distinct from the claims in the earlier filed patent," its continuation claims cannot be considered "identical to the one found in the parent patent" because they were not rejected for "statutory" double patenting. *Id*. at 10. But SimpleAir acknowledges that it had to file terminal disclaimers to cure "obviousness-type double patenting" rejections, and thus, the '838 and '048 Patents are presumed to be obvious, not patentably distinct, variations of the prior claims. SimpleAir states: "[O]bviousness type' double patenting doctrine was developed 'to prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are ***not patentably distinct*** from claims in the earlier filed patent.'" Opp. at 10 (emphasis added). As such, the terminal disclaimers underscore why the '838 and '048 Patent claims are "nearly identical to" and just a "slight variation of" their parent claims. Mot. at 23. The slight variations in the claims of the patents-in-suit should not allow SimpleAir to escape claim preclusion. This conclusion is entirely consistent with the statutory framework, which treats all terminally-disclaimed continuation claims as though they were included in a single patent with a single term, thereby avoiding any possibility that a patentee could obtain additional term for patentably indistinct claims. The similarity between claims in a terminally disclaimed continuation and its parent is both the reason that the term of the continuation must be limited and the reason that such patents form part of the same cause of action for preclusion purposes.

Finally, SimpleAir argues that a terminal disclaimer can only be used to avoid a double-patenting rejection if all the patents in the family are commonly owned. Opp. at 11. But this fact does not remotely suggest that the common owner should be able to assert its terminally-

8

disclaimed patents in serial, successive lawsuits. If anything, it suggests the opposite. As SimpleAir states, the reason for the common-ownership requirement is to prevent the possibility of serial, harassing suits by different assignees. Opp. at 10-11. But the reason why serial suits by different assignees is a particular concern is that different assignees can frustrate claim preclusion, given that the doctrine generally requires the same parties in each suit. In other words, the policy behind the common-ownership requirement presupposes that claim preclusion will prevent the *same* assignee from serially asserting terminally-disclaimed patents, and therefore focuses on the problem of serial assertion by *different* assignees who would not be bound by claim preclusion.

> **C. Claim Preclusion Applies Because The Patents Raise The Same Cause Of Action As The Prior SimpleAir Patents <u>And</u> Could Have Been Asserted In The Prior Cases**

SimpleAir does not dispute that it could have brought the '838 and '048 Patents in its earlier suits, such as *SimpleAir II/III*.[7] Instead, SimpleAir argues that "[a] cause of action that accrues after the filing of a lawsuit is not precluded by the plaintiff's decision not to amend to assert it." Opp. at 19. This statement may be correct for "new" causes of action. *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010). But if, as here, the plaintiff's claims are part of the same transaction as its previously-litigated cause of action, it does not get a "second bite at the apple" to assert patent claims it could have raised in the prior litigations. SimpleAir concedes this elsewhere in its brief, stating: "A cause of action is not barred merely because it 'could have been brought' in a prior case; *it must additionally be identical to the prior cause of action <u>or based on the same transactional facts as that prior cause of action</u>.*" Opp. at 16-17 (emphasis added). The '838 and '048 Patents satisfy both of these criteria. They could have been brought in *SimpleAir*

---

[7] SimpleAir suggests that it needed the Court's approval to add these patents, citing the Docket Control Order from *SimpleAir III* which stated that Court approval is needed to add patents. Opp. at 20 fn. 12. But this Order issued on April 24, 2014, months after the asserted patents issued. Moreover, the patents issued before Google even responded to SimpleAir's Complaint in *SimpleAir III* — *i.e.*, they issued at a time when SimpleAir had the ability to amend.

9

*II/III*, and they are based on the same transactional facts as in *SimpleAir II/III*. *See* Section II(A), *supra*. Thus, claim preclusion applies.

### III. SimpleAir's Infringement Claims Are Barred By the *Kessler* Doctrine

SimpleAir makes only one argument against the application of the *Kessler* doctrine to SimpleAir's fourth lawsuit — namely, that *Kessler* only applies to "the asserted patent claims in the prior lawsuit." Opp. at 8. This is false: the *Kessler* doctrine applies to "all claims that were brought ***or could have been brought*** in the first suit." *Brain Life*, 746 F.3d at 1059 (emphasis added). Indeed, a central purpose of the doctrine is to complement traditional claim preclusion to ensure that a product exonerated of infringement cannot be dragged through litigation again based on later use of the product by the defendant or its customers. *Id*. Thus, to the extent the Court concludes claim preclusion applies to SimpleAir's claims directed at pre-judgment activity, *Brain Life* and *Kessler* make clear that SimpleAir cannot sustain a claim against post-judgment activity.

Alternatively, if the Court were to find that SimpleAir could escape claim preclusion on a technicality, the *Kessler* doctrine could also fill this gap and bar this suit *in toto*. Mot. at 26-27. This conclusion is supported by the Federal Circuit's holding in *Brain Life* that the *Kessler* doctrine is meant to be a flexible gap-filling doctrine, shielding adjudged non-infringers "where circumstances justify that result." *Id*. SimpleAir argues that "the[se] arguments represent a platform for patent reform[,] not an invocation of existing law." Opp. Br. at 20. Not so: "existing law" casts the *Kessler* doctrine as a flexible gap-filling doctrine that can shield an adjudged non-infringer from repeated, harassing litigation even when other preclusion doctrines cannot. Thus, if the Court were to conclude that claim preclusion does not apply to this case, this case would nonetheless be a proper case to bar under *Kessler*. *Kessler* provides this Court with ample authority to stop a ***fourth*** lawsuit against the same accused product, based on the same series of continuation patents.

|  |  |
|---|---|
| DATED: June 10, 2016 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By  */s/ Michael D. Powell*<br><br>J. Mark Mann<br>State Bar No. 12926150<br>G. Blake Thompson<br>State Bar No. 24042033<br>MANN \| TINDEL \| THOMPSON<br>300 West Main Street<br>Henderson, Texas 75652<br>(903) 657-8540<br>(903) 657-6003 (fax)<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Charles K. Verhoeven<br>   charlesverhoeven@quinnemanuel.com<br>Michelle A. Clark<br>   michelleclark@quinnemanuel.com<br>50 California Street, 22nd Floor<br>James Judah<br>   jamesjudah@quinnemanuel.com<br>San Francisco, California  94111-4788<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>Patrick D. Curran<br>   patrickcurran@quinnemanuel.com<br>51 Madison Avenue, 22nd Floor,<br>New York, New York 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Michael D. Powell<br>   mikepowell@quinnemanuel.com<br>555 Twin Dolphin Dr.,<br>Redwood City, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650)801-5100 |

Joshua L. Sohn
   joshuasohn@quinnemanuel.com
Deepa Acharya
  deepaacharya@quinnemanuel.com
777 6th St. NW, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on June 10, 2016.

*/s/ Michael D. Powell*
Michael D. Powell