IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLE AIR, INC., | § § § | |
| *Plaintiff*, | § § | CASE NO. 2:16-CV-388-JRG |
| v. | § § | |
| GOOGLE INC., | § § | |
| *Defendant*. | § § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Google Inc.'s Corrected Motion to Dismiss (Dkt. No. 17). In this case, the fourth iteration of *SimpleAir v. Google*, SimpleAir once again asserts that Google's Cloud Messaging and Cloud to Device Messaging services (collectively, "GCM") infringe its patents related to push notification technology. Google seeks dismissal under two related theories: (1) that claim preclusion doctrines bar SimpleAir's infringement claims because the patents-in-suit could have and should have been brought against Google in a prior lawsuit that arose from the same operative facts as the present action; and (2) that the *Kessler* doctrine bars SimpleAir's infringement claims against products already adjudged to be non-infringing in the prior lawsuits. Having carefully considered the parties' arguments, the Court is persuaded that these doctrines effectively bar SimpleAir's claims, and accordingly, Google's motion should be granted.

## I. BACKGROUND

### A. *SimpleAir I*

On September 15, 2011, SimpleAir filed its first patent infringement suit against Google, alleging that GCM infringed U.S. Patent Nos. 7,035,914 and 6,021,433. *SimpleAir, Inc. v. Google Inc.*, Case No. 2:11-cv-416-JRG ("*SimpleAir I*"). After dropping the '433 Patent from the case, SimpleAir proceeded to trial on the '914 Patent. After the first trial, the jury found that the asserted claims were infringed and valid, but was unable to reach a decision on damages. The Court accepted the jury's unanimous decision on infringement and validity but ordered a new trial on the issue of damages. The parties subsequently retried damages issue before a new jury, and that jury awarded $85 million to SimpleAir. On appeal, however, the Federal Circuit reversed the infringement verdict and ruled that Google did not infringe the '914 Patent as a matter of law. *SimpleAir Inc. v. Sony Ericsson Mobile Comm'ns AB*, 820 F.3d 419 (Fed. Cir. 2016).

### B. *SimpleAir II/III*

On November 4, 2013 and January 8, 2014, SimpleAir filed two new lawsuits against Google, which the Court consolidated. *SimpleAir, Inc. v. Google Inc.*, Case No. 2:13-cv-937; *SimpleAir, Inc. v. Google Inc.*, Case No. 2:14-cv-11 (collectively "*SimpleAir II/III*"). There, SimpleAir asserted U.S. Patent Nos. 8,572,279 and 8,601,154 against Google's GCM—the same product accused in *SimpleAir I*. The '279 and '154 Patents have the same title ("System and Method for Transmission of Data") and the same specification as the '914 Patent. Moreover, the '279 and '154 Patents are both continuations of Application No. 11/409,396, which itself is a continuation of the application that matured into the '914 Patent. During the prosecution of all

three of these patents, SimpleAir filed a terminal disclaimer to avoid an obvious type double-patenting rejection.

After dismissing its claims based on the '154 Patent, SimpleAir proceeded to trial on the '279 Patent. The jury returned a verdict of non-infringement, and the Court entered a final judgment in accordance with the verdict.

### C. *SimpleAir IV*

On April 8, 2016, after *SimpleAir I* and *SimpleAir II/III* had been resolved in Google's favor, SimpleAir filed the present action against Google (*SimpleAir IV*). This time, SimpleAir asserts that GCM (the same product accused in the preceding suits) infringes U.S. Patent Nos. 8,639,838 and 8,656,048. Both of these patents issued during the earliest stages of *SimpleAir II/III*; the '838 Patent issued before and the '048 Patent issued just days after SimpleAir filed its First Amended Complaint in *SimpleAir II/III*.

Just like the '914, '279, and '154 Patents (against which Google prevailed in the preceding cases), the '838 and '048 Patents are titled "System and Method for Transmission of Data" and share the same specification. The patents-in-suit share a common application with the '279 and '154 Patents—which are continuations of the '914 Patent. Further, like the patents asserted in *SimpleAir II/III*, the '838 and '048 Patents are subject to terminal disclaimers, which SimpleAir filed to overcome an obvious type double-patenting rejection.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6)

A party may move to dismiss a claim for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a Court considers a Rule 12(b)(6) motion it must assume that all well-pleaded facts are true and must view them in a light most favorable to the

3

non-moving party. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The Court must decide whether those facts state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 217 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Claim preclusion and the *Kessler* doctrine are properly adjudicated at the motion-to-dismiss stage. *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1346 (Fed. Cir. 2014) (affirming dismissal on claim preclusion grounds); *Adaptix, Inc. v. Amazon.com, Inc.*, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) (granting dismissal under the *Kessler* doctrine).

B. **Claim Preclusion**

Claim preclusion is a mixed question of regional circuit law and Federal Circuit law. *Senju*, 746 F.3d at 1348. Courts must look to the law of the regional circuit for "guidance regarding the principles of claim preclusion"; however, "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases," and courts should therefore apply Federal Circuit law to such issues. *Id.* "Claim preclusion bars the litigation of claims that have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). The test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.* To evaluate the fourth element, courts have adopted the "transaction test," which focuses on whether the two cases "are based on the same nucleus of operative facts." *Houston Professional Towing Assoc. v. City of Houston*, 812 F.3d

443, 447 (5th Cir. 2016). It is the "nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim." *Id.* (citations omitted).

### C. *Kessler* Doctrine

"There exists a separate and distinct doctrine, known as the *Kessler* Doctrine, that precludes some claims that are not otherwise barred by claim or issue preclusion." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055–56 (Fed. Cir. 2014). Originating from the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907), the *Kessler* Doctrine "fills the gap between . . . preclusion doctrines . . . allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056. The *Kessler* Doctrine grants "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product—to a particular thing—as an article of lawful commerce.'" *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) (quoting *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 34 S. Ct. 403, 418–19 (1914)).

### III. ANAYLYSIS

#### A. Claim Preclusion

The first three elements of the doctrine of claim preclusion are not in dispute. (*See* Mot. at 8; Resp. at 6.) SimpleAir is accusing the same defendant (Google) of infringement based on the same systems and services (GCM) that were previously adjudged on the merits to be non-infringing. The only remaining dispute is whether the claims asserted in *SimpleAir IV* arise from the same nucleus of operative facts as the prior cases between these parties.

5

In this suit, SimpleAir asserts the '048 and '838 Patents. These patents were not asserted in any prior case against Google. Citing Federal Circuit law, SimpleAir contends that claim preclusion never applies to patents not previously asserted because "each patent asserted raises an independent and distinct cause of action." (Resp. at 12 (quoting *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996).) Notwithstanding this apparent bright-line rule, Google contends that the transaction test has been adopted by the Federal Circuit and is adequate to properly bar assertion of the '048 and '838 Patents. *See Senju*, 746 F.3d at 1349 ("[A] cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap.").

While *Kearns* remains intact, subsequent decisions by the Federal Circuit suggest that its general rule is not absolute but can be subject to appropriate exceptions under the transaction approach to claim preclusion. For instance, in *Abbey v. Mercedes Benz of North America, Inc.*, the Federal Circuit explained that "Kearns provides that *normally* when patents are not included in a suit, they are not before a court, and while preclusion *may* attach to certain issues, causes of action based on patents that are not included in a suit are *ordinarily* not captured, and therefore precluded, by judgments that pertain to other patents." 138 F. App'x 304, 307 (Fed. Cir. 2005) (emphasis added).

In *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, the Federal Circuit held that res judicata barred assertion of patent claims added in reexamination six years after the initial lawsuit was filed because the claims "relate to the same set of transactions as those litigated in the [prior actions]." 672 F.3d 1335, 1340 (Fed. Cir. 2012). The court reasoned:

> [T]here is no force to Aspex's argument that the reexamination of the '545 patent created entirely new causes of action on which Aspex could freely sue, even though it had previously had an opportunity to sue on the corresponding original claims of the '545 patent. Aspex could have sought relief for infringement of

> original claim 23 of the '545 patent in the previous litigation . . . but it elected not to do so. To allow Aspex to pursue amended claim 23 and new claim 35 in this case would thus present a clear instance of "claim splitting," which is forbidden by the principles of res judicata.

*Id.* at 1341 (citation omitted).

Two years later, the Federal Circuit reaffirmed its stance on claim preclusion in *Senju*. In addition to considering whether the patents overlapped, the court also considered whether there was "overlap of *the product or process* accused in the instant action with *the product or process* accused in the prior action." *Senju*, 746 F.3d at 1349 (emphasis in original). The court concluded that the accused products and processes are "essentially the same" and reaffirmed the holding in *Aspex* (claims emerging from reexamination do not create a new cause of action). *Id.* at 1352–53. The court further noted that the plaintiff was effectively seeking a "do over" or "a second bite at the apple" by reasserting substantially similar patent claims against the same party and the same product. *Id*. at 1353.

SimpleAir contends that the Federal Circuit's holdings in *Aspex* and *Senju* are inapposite because those cases considered patent claims emerging from reexamination, not terminally disclaimed continuation patents such as the '048 and '838 Patents. (*See* Resp. at 13–15.) Notwithstanding this distinction, the Court is persuaded that the transactional approach to claim preclusion endorsed by both the Federal Circuit and the Fifth Circuit is broad enough to bar SimpleAir's claims in this case.

Setting aside the fact that the '048 and '838 Patents bear different patent numbers than the patents asserted in *SimpleAir I–III,* the underlying invention is the same. Like the '914, '279, and '154 Patents against which Google prevailed in the preceding cases, the '838 and '048 Patents are titled "System and Method for Transmission of Data" and share the same

7

specification. The patents-in-suit share a common application with the '279 and '154 Patents—which are continuations of the '914 Patent.

The factual overlap between this and the prior litigations is amplified by the terminal disclaimers that SimpleAir filed to overcome a double-patenting rejection of its continuation applications. The non-statutory "obviousness type" double patenting doctrine was developed "to prevent a patent owner from extending his exclusive right to an invention through claims in a later-filed patent that are not patentably distinct from the earlier filed patent." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009). A patentee may overcome such a rejection by filing a terminal disclaimer under 35 U.S.C. § 253, disclaiming "any terminal part of the term of the patent," thereby guaranteeing that the second patent would expire at the same time as the first patent. *In re Longi*, 759 F.2d 887, 894 (Fed. Cir. 1985). The practical result of terminal disclaimer is that the subsequently issued patent "shall thereafter be considered as part of the original patent . . . ." 35 U.S.C. § 253(a).

Even in *Kearns*, the case principally relied on by SimpleAir, the general proposition that "[e]ach patent asserted raises an independent and distinct cause of action" advances from the premise that "each patent, by law, covers a[n] independent and distinct invention." 94 F.3d at 1556. Yet, continuation applications are inherently *dependent* upon the parent applications, as they share a common specification, and the PTO deemed the patents-in-suit to be patentably *indistinct* variations of the same invention claimed by the previously asserted patents.

In addition to preventing an impermissible extension of a patent monopoly, the "second rationale" of a terminal disclaimer "is to prevent multiple infringement suits by different assignees asserting *essentially the same patented invention*." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (emphasis added). To prevent such efforts by multiple assignees, terminal

8

disclaimers must "[i]nclude a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting." 37 C.F.R. § 1.321(c)(3).

While this safeguard prevents successive lawsuits brought by multiple assignees of essentially the same patented invention, it does not prevent a single patentee from engaging in similar conduct. However, for precisely the same reasons that multiple assignees are precluded from filing multiple lawsuits asserting "patents claiming patentably indistinct variations of the same invention" against a single defendant, traditional preclusion doctrines are broad enough to shield similar successive lawsuits by a single patentee against a single defendant. *See* MPEP § 804 (9th ed. Nov. 2015).

Aside from the factual overlap between the series of patents asserted by SimpleAir, another touchstone of the claim preclusion doctrine is whether the claims in the present action could have been brought in the prior action. *Brain Life*, 746 F.3 at 1053 ("[C]laim preclusion bars both claims that were brought as well as those that could have been brought."); *Duffie*, 600 F.3d at 372 ("Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."). Here, it is undisputed that SimpleAir *could have* included the '838 and '048 Patents in *SimpleAir II/III*. The '838 Patent issued before and the '048 Patent issued just days after SimpleAir filed its First Amended Complaint in that case. Rather than amend its complaint to add claims covering essentially the same invention, however, SimpleAir made the decision to delay filing this suit until just days after the Federal Circuit reversed the jury's verdict in *SimpleAir I*. This was clearly an intentional and strategic decision. In this context, *Aspex* and *Senju* are even more problematic for SimpleAir because in those cases

the claims emerging from reexamination—unlike the continuation claims asserted in this action—could *not* have been brought in the initial suits.

This Court finds that claim preclusion bars SimpleAir from bringing this action.

### B. *Kessler* Doctrine

It is well settled that "a party who sues a tortfeasor is ordinarily not barred by a prior judgment from seeking relief for discrete tortious action by the same tortfeasor that occurs subsequent to the original action." *Aspex*, 672 F.3d at 1335 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). Since the doctrine of claim preclusion does not bar SimpleAir's claims relating to Google's post-judgment actions, Google argues that the Court should apply the *Kessler* Doctrine to fill the gaps.

The *Kessler* Doctrine "fills the gap between . . . preclusion doctrines . . . allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056. The Court is persuaded that the present circumstances justify application of the *Kessler* Doctrine. Through the final resolution of three prior lawsuits, Google's GCM has acquired the status of a non-infringing product. *See id.* ("The principle that, when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquire the 'status' of a noninfringing device.").

SimpleAir argues that the *Kessler* Doctrine is inapplicable in this case because the '838 and '048 Patents "were never previously asserted." (Resp. at 20.) However, for the same reasons that the doctrine of claim preclusion applies in this case, the circumstances justify application of the *Kessler* Doctrine to SimpleAir's assertion of terminally disclaimed continuation patents. A litigant's strategic decisions have consequences, and judicial decisions must have finality.

## IV.    CONCLUSION

Recognizing that any court's determination that there exists the same "nucleus of operative facts" between separate lawsuits requires a thoughtful recounting of the totality of the circumstances with an honest contextual review of the conduct of the parties, both their acts and omissions, this Court is left with the conviction that, in this case, SimpleAir should be barred from pursuing *SimpleAir IV*.

Apparently concerned about the optics of its litigation strategy, SimpleAir assured the jury in *SimpleAir I* that the Court would prevent duplicative lawsuits:

> They say that SimpleAir has filed other lawsuits against Google. One, two, three. And they're suggesting to you that in each one of those lawsuits we're going to come back and ask for another hundred something million dollars and keep collecting and collecting and collecting. Do you think that the court's going to let that happen? Do you think that another jury is going to let that happen? That isn't how it works.

(*SimpleAir I*, January 17, 2014 A.M. Trial Tr. at 112:21–113:4.) This Court is persuaded now, just as the jury was persuaded in 2014, that indeed: *that isn't how it works*. The doctrine of claim preclusion bars SimpleAir from now suing the same defendant and accusing the same products by asserting nothing more than slightly different shades of the same invention.

Further, application of the *Kessler* Doctrine is warranted in this case, and its extension to these facts prevents an unjust gap existing between the claim preclusion discussed above and inconsistent post-final judgment conduct by SimpleAir.

Strategic decisions by litigants have consequences, and courts are obligated not to allow such strategies to chip away at the foundational principle of judicial finality. Finality gives birth to reliability, and without a reasonable level of reliability the Law ceases to be the guiding light intended by our Founders to both illuminate and circumscribe the conduct of our citizens and institutions.

Based on the foregoing, SimpleAir's claims of patent infringement of the '838 and '048 Patents against Google's GCM are barred in their entirety. Accordingly, Google's Corrected Motion to Dismiss (Dkt. No. 17) is **GRANTED**.

**So ORDERED and SIGNED this 2nd day of September, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE