**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SimpleAir, Inc., | Civil Action No. 2:16-cv-388-JRG |
| Plaintiff, | **Jury Demanded** |
| v. | |
| Google LLC, | **[Filed under Seal]** |
| Defendant. | |

**SimpleAir's Response to Google's Motion to Dismiss and Motion to Transfer
&
SimpleAir's Request for Judicial Notice**

## **Table of Contents**

I.      Introduction. ................................................................................................... 1

II.     Statement of issues. ........................................................................................ 1

III.    Request for Judicial Notice of the Record in *Seven* ..................................... 1

IV.     Background. .................................................................................................... 2

        A.      SimpleAir is an inventor-owned company that holds the foundational
                patents covering modern-day push notifications. .................................. 2

        B.      Google is in the business of delivering information, including digital
                content and push notifications. ............................................................ 3

                1.      Google delivers information through its Edge network. ............... 4

                2.      Caching and localization are vital to Google's business. ........... 4

                3.      The GGC servers independently determine what content to cache
                        based on local requests. .............................................................. 5

                4.      Google's GGC servers are housed in spaces in the District leased
                        by Google. ................................................................................... 6

                5.      Google GGC servers located in this District cache Google's
                        products and deliver them to residents of this District. ............... 7

V.      The Court should deny Google's motion to dismiss for improper venue. ........ 8

        A.      Google forfeited its objection to proper venue. .................................... 8

                1.      Google first forfeited its venue defense by continuing to urge the
                        Federal Circuit's affirmance of this Court's judgment for almost a
                        year after *TC Heartland*. ............................................................. 9

                2.      Google again forfeited its objection by delaying the filing of a
                        venue motion after the remand. ................................................. 11

        B.      Google has a regular and established place of business in the District. ........ 12

                1.      The GGC servers and the space the servers occupy constitute a
                        regular and established place of business of Google. ................. 12

                        a.      The GGC servers and the locations where they are housed
                                are physical places. ........................................................ 12

                        b.      The GGC servers and the locations where they are housed
                                are regular and established places of business. ............... 13

                        c.      The GGC servers and the locations where they are housed
                                are regular and established places of business of Google. ........... 15

                2.      The GGC servers are related to the alleged acts of infringement. ........... 16

        C.      Google has committed acts of infringement in the District. ................. 16

VI.     The Court should deny Google's 1404 transfer motion. ................................. 18

A.     The private interest factors......................................................................... 18

    1.    Sources of proof.................................................................... 18

    2.    Compulsory process.............................................................. 19

    3.    The cost of attendance for willing witnesses. ........................... 19

    4.    Practical problems................................................................. 20

B.     The public interest factors......................................................................... 22

    1.    Court congestion. ................................................................. 22

    2.    Local interest....................................................................... 22

    3.    Familiarity of the forum ....................................................... 23

    4.    Avoidance of unnecessary problems ....................................... 23

VII.   Conclusion. .......................................................................................... 23

## Table of Authorities

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG,
     2014 U.S. Dist. LEXIS 155805 (E.D. Tex. Nov. 3, 2014) ...................................................... 20

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG,
     2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sep. 5, 2018) ......................................................... 2

*ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-CV-00798-JRG,
     2014 U.S. Dist. LEXIS 118588 (E.D. Tex. Aug. 26, 2014) .................................................... 20

*E-Contact Technologies, LLC v. Apple, Inc.*, case no. 1:11-cv-426-LED/KFG,
     dkt. 405 (E.D. Tex. Sept. 28, 2012) ...................................................................................... 19

*Exmark Mfg. Co. v. Briggs & Stratton Corp.*, No. 8:10CV187,
     2018 U.S. Dist. LEXIS 107862 (D. Neb. June 27, 2018)....................................................... 10

*Exmark Mfg. Co. v. Briggs & Stratton Corp.*,No. 8:10CV187,
     2018 U.S. Dist. LEXIS 120378 (D. Neb. July 19, 2018) ....................................................... 10

*Geotag, Inc. v. OnTargetJobs, Inc.*, case no. 2:13-cv-0064-JRG
     (E.D. Tex. Mar. 7, 2014), Dkt. 28......................................................................................... 21

*In re EMC Corp*, 501 Fed. Appx. 973 (Fed. Cir. 2013)................................................................ 21

*In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir. 2017) ............................................................. 8

*In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010)................................................................... 21

*In re Wyeth*, 406 F. App'x 475 (Fed. Cir. 2010) .......................................................................... 21

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)...................................................... 21

*Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG,
     2017 U.S. Dist. LEXIS 193581 (E.D. Tex. Nov. 22, 2017) .................................................... 9

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165,
     60 S. Ct. 153 (1939)................................................................................................................. 8

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir.2007) .................................................................... 2

*Realtime Data LLC v. Hewlett Packard Enter. Co.*, No. 6:18-CV-00383-RWS,
     2018 U.S. Dist. LEXIS 163581 (E.D. Tex. Sep. 24, 2018) ..................................................... 9

*RPost Holdings, Inc. v. StrongMail Sys.*, 2013 U.S. Dist. LEXIS 116894,
     (E.D. Tex. Aug. 19, 2013) ..................................................................................................... 20

*Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018)..................... *passim*

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
     137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) ............................................................................. 9

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RWS,
     2018 U.S. Dist. LEXIS 172381 (E.D. Tex. Oct. 5, 2018) ..................................................... 11

**Rules**

Fed. R. Civ. P. 62.1 ................................................................................................................... 10

Fed. R. Evid. 201 ....................................................................................................................... 2

**Index of Exhibits**

| Exhibit | Description |
|---|---|
| 1 | Sundar Pichai, *Founder's Letter* (April 2016), https://www.blog.google/topics/inside-google/this-years-founders-letter/. |
| 2 | *Our Infrastructure*, Google Edge Network, https://peering.google.com/#/infrastructure |
| 3 | ██████████████████████████████ |
| 4 | The Value of Content Distribution Networks and Google Global Cash ("Axelrod presentation"). |
| 5 | FAQ, Google Edge Network, https://peering.google.com/#/learn-more/faq |
| 6 | ████████████████████████████████████████████ |
| 7 | ████████████████████████ GOOG_SS_00465322-327. |
| 8 | ████████████████████████ GOOG_SS_00465365-373. |
| 9 | ████████████████████ GOOG_SS_00465337-343.  This is the same document filed under seal in the *Seven* case at Dkt. 141-23. |
| 10 | ██████████████ |
| 11 | ████████████████████████████████ |
| 12 | ██████████████████ |
| 13 | Google ISP Partner Request Portal, https://isp.google.com/partner_request/?data.request_type=Caches%20(GGC) |
| 14 | Declaration of Tim von Kaenel |
| 15 | Declaration of John Payne |

I.      **Introduction.**

Google's motion to dismiss for improper venue should be denied.  Venue is proper in this District because (1) as this Court found in *Seven*, the GGC servers constitute, and occupy space that constitutes, a regular and established place of business of Google; and (2) Google has performed acts of infringement in this District, as we have alleged.  In addition, Google forfeited its venue objection by (a) asking the Federal Circuit to affirm this Court's dismissal order and then (b) waiting nearly five months after the remand to challenge venue, precisely because Google wanted to first take the Court's temperature on a new claim preclusion motion before moving on venue grounds.

Google's motion to transfer under § 1404 should also be denied.  Google fails to show that any of the public or private interest factors clearly weighs in favor of transfer.  And the interests of judicial economy—combined with Google's failure to earlier seek transfer (in this case or in the prior cases)—strongly weigh against transfer to Central California.

II.     **Statement of issues.**

Google's statement of the issues omits the following issue:  should the Court allow Google to challenge venue under § 1406 only after Google (a) asked the Federal Circuit to affirm this Court's dismissal order, thereby forfeiting any challenge to proper venue in this Court, and then (b) delayed filing a transfer motion until five months after the remand as it tried to gauge the Court's receptiveness to issuing another dismissal order?

III.    **Request for Judicial Notice of the Record in *Seven*.**

This Court found that the record in *Seven* was sufficient to show venue is proper in this District based on Google's GGC servers.  *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018).  The same facts regarding Google's business and its GGC servers that led to that conclusion are also applicable in this case and are relied upon by SimpleAir here (along

with certain additional facts relating to the accused Google Cloud Messaging and Firebase Cloud
Messaging services).  We summarize those facts in the next section below.

In addition, we respectfully request that the Court take judicial notice of the venue record
in *Seven*.  Fed. R. Evid. 201; *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-
CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065, at *17 (E.D. Tex. Sep. 5, 2018) (("[I]t is clearly
proper in deciding a 12(b)[] motion to take judicial notice of matters of public record." (quoting
*Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir.2007)).  In particular, we request the Court
take judicial notice of (1) the following docket items from that case:  *Seven Networks, LLC v.
Google LLC*, case no. 2:17-cv-00442-JRG (E.D. Tex.) docket items 141 (Sealed Response to
Venue Motion), 141-1 to 141-34 (Exhibits A-HH), 197 (Motion for Leave to Supplement the
Evidence), 197-1 to 197-3; and (2) the factual findings regarding Google's business and its GGC
servers made by this Court in its order denying Google's motion challenging venue in *Seven
Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 947-966 (E.D. Tex. 2018).

## IV.   Background.

### A.    SimpleAir is an inventor-owned company that holds the foundational patents covering modern-day push notifications.

Inventors John Payne and Tim von Kaenel founded SimpleAir in 2004 to buy back
the patents they invented in 1995 at a company called AirMedia.  That company was
the provider of AirMedia Live!, a service that sent wireless push notifications about Internet
content and events (breaking news, sports scores, personal messages) to remote computing
devices with content-specific apps called "viewers."  The service debuted as one of six premier
products at Demo Conference '96, next to Java and the Palm Pilot.  It was highly regarded by the
industry elite but met little commercial success.  In a few short years the company failed.

A decade later smartphones emerged and push notification services sending wireless notifications about Internet content and events to content-specific apps soon followed and thrived.  It started with Apple's Push Notification Service for the iPhone and was soon followed by competitors, including the Google Cloud Messaging Service for Android phones.  Billions (and today trillions) of messages were sent each day, using the patented inventions developed by AirMedia.  SimpleAir sued for infringement.

After years of litigation, SimpleAir settled with Apple, BlackBerry, and Microsoft for meaningful sums.  Each licensed SimpleAir's portfolio of what now amounts to 12 issued patents in two families based on the AirMedia Live! service.  SimpleAir and Google, however, continue to litigate.  These parties have gone to trial on two of SimpleAir's patents, the '914 and '279 patents, and have litigated numerous CBM and IPR petitions filed by Google (6 petitions against 3 of SimpleAir's patents, each resolved fully in SimpleAir's favor).  The prior cases asserting those patents ultimately failed, due to non-infringement findings.  However, the claim elements and limitations of the '914 and '279 patents that were found not infringed are not present in the claims of the currently asserted '048 and '838 patents.  Dkt. 1 ¶¶5-6; Dkt. 25 at 4, n.3.  Moreover, the claims of the '048 and '838 patents are in fact infringed by Google's GCM and Firebase Cloud Messaging services, and they are valid and patentably distinct from the previously litigated claims of the parent patents.  Dkt. 81.

### B.    Google is in the business of delivering information, including digital content and push notifications.[1]

Google is a multinational technology company in the business of storing, organizing, and distributing data.  "Google is an information company."  Ex. 1 (April 2016 Founder's letter) at 9.

---

[1] This section borrows heavily (often verbatim) from *Seven*'s responsive brief because (1) the same facts recited there are applicable in this case and (2) those facts were found sufficient to support venue in that case and should be similarly found sufficient here.

3

The "founding mission of Google" was "to organize the world's information and make it universally accessible and useful" and is "even truer and more important" today. *Id.* at 2.

### 1.   Google delivers information through its Edge network.

Google's Edge network consists of Core Data Centers, Edge Points of Presence, and Edge Nodes. Ex. 2 (Our Infrastructure). The Core Data Centers are used for computation and backend storage. *Id.* at 2. Edge Points of Presence are the middle tier of the Edge Network and connect the Data Centers to the rest of the internet. *Id.* at 3. Edge Nodes are the layer of the network closest to the end-users. *Id.* at 4. ███████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

██████████████████████

### 2.   Caching and localization are vital to Google's business.

Because "hosting all content everywhere is inefficient, it makes sense to cache popular content and serve it locally." Ex. 4 (Axelrod presentation)[2] at 4. Doing so brings delivery costs down for Google, network operators, and internet service providers. Ex. 5 (Edge FAQ) at 5 ("Our edge nodes is a way of bringing content closer to the end user and bringing delivery costs down for everyone"). Storing content locally also allows it to be delivered more quickly, which improves user experience: "Serving content from the edge of the network closer to the user improves performance [and] user happiness." Ex. 4 at 3. To achieve these benefits, Google has placed Edge Nodes throughout the United States, including in this District. Ex. 2 at 4; Ex. 3 ¶¶1-

---

[2] Mike Axelrod is a member of Google's Edge Network team.

3; ex. 6 (Cooper letter to Eichmann 2/13/19) at 1-2; ███████████████ ██

███████████████ ██████████████ ██ ████

███████████████████████████████ █

████████

### 3. The GGC servers independently determine what content to cache based on local requests.

The GGC servers in Google's Edge Nodes include software that Google refers to as

███████████████████████████████████

████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████

        ████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████

     ████████████████████████████

████████████████████████████████████

█████████████████████████████████

_____

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████

**4.     Google's GGC servers are housed in spaces in the District leased by Google.**

Google's GGC servers are housed in spaces leased by Google from Internet Service

Providers (ISPs) whose networks "have substantial traffic to Google and are interested in saving

[bandwidth]." ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████



**5.      Google GGC servers located in this District cache Google's products and deliver them to residents of this District.**

Google does not dispute that the following was true at the time the complaint in this case was filed (i.e., April 2016):



████████████████████████████████████████████

The photographs below show Google's GGC servers hosted by Suddenlink and the building where they are located at ████████████████████████


Exterior


Interior Rack Spaces


Google GGC Servers

In addition, Google does not dispute that as of the time of the complaint:



## V.    The Court should deny Google's motion to dismiss for improper venue.

### A.    Google forfeited its objection to proper venue.

"Being a privilege, [venue] may be lost.  It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." *In re Micron Tech., Inc.*, 875 F.3d 1091, 1101 (Fed. Cir. 2017) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp*., 308 U.S. 165, 168, 60 S. Ct. 153, 155 (1939).  "Litigation conduct, undue delay, and the stage of the proceedings (i.e. venue objections presented close to trial) may justify forfeiture of an improper venue defense." *Realtime Data LLC v. Hewlett Packard Enter. Co*., No. 6:18-CV-00383-RWS,

2018 U.S. Dist. LEXIS 163581, at *11 (E.D. Tex. Sep. 24, 2018) (internal citation omitted). "[T]he Federal Circuit has suggested that the forfeiture inquiry should at least start with an examination of the 'time from when the defense becomes available to when it is asserted,' along with 'other factors . . . which may implicate efficiency or other interests of the judicial system and of the other participants in the case.'" *Intellectual Ventures II LLC v. FedEx Corp*., No. 2:16-CV-00980-JRG, 2017 U.S. Dist. LEXIS 193581, at *9 (E.D. Tex. Nov. 22, 2017), quoting *In re Micron*, 875 F.3d at 1102.  Here Google has twice forfeited its improper venue objection.

**1.      Google first forfeited its venue defense by continuing to urge the Federal Circuit's affirmance of this Court's judgment for almost a year after *TC Heartland*.**

Without proper venue, a district court has no authority to preside over a matter or enter a judgment on the merits in that matter.  When a defendant asks an appellate court to affirm a district court judgment, it is affirmatively endorsing the authority of the district court to enter that judgment and thus conceding the district court had proper venue.  Accordingly, by asking the Federal Circuit to affirm this Court's judgment against SimpleAir, Google affirmatively endorsed this Court's authority to preside over this case and necessarily forfeited any objection to proper venue in this Court for this matter.

Google asserts that "*TC Heartland* constituted a change of law that created a venue defense that was not previously 'available.'"  Dkt. 69 at 4 (citing *In re Micron Tech., Inc.*, 875 F.3d 1091, 1099-1100 (Fed. Cir. 2017).  That new defense was available as of May 22, 2017. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017).  At that time, this case was on appeal.  But that did not make the issue of proper venue "academic," as Google asserts.  Dkt. 69 at 5.  The appeal was still pending, and there remained more than seven months before the January 11, 2018, oral argument at the Federal Circuit. During that period Google could have and should have asserted its venue objection.

9

Google could have notified the Federal Circuit of its objection and moved to have the case remanded so that its challenge to venue could be addressed—potentially obviating the need for the Federal Circuit to even take up SimpleAir's appeal.  Google could have also requested an indicative ruling from this Court under Rule 62.1 during the pendency of the appeal.  Fed. R. Civ. P. 62.1; *Exmark Mfg. Co. v. Briggs & Stratton Corp*., No. 8:10CV187, 2018 U.S. Dist. LEXIS 107862, at *7 (D. Neb. June 27, 2018) (Magistrate Judge Order finding forfeiture: "Briggs could have requested an indicative ruling from the district court under Fed. R. Civ. P. 62.1 during the pendency of the appeal.  Briggs concedes that Rule 62.1 could have acted as a vehicle for evaluating the venue issue earlier."); *Exmark Mfg. Co. v. Briggs & Stratton Corp*., No. 8:10CV187, 2018 U.S. Dist. LEXIS 120378 (D. Neb. July 19, 2018) (overruling objections to Magistrate Judge Order).  But Google did not do that because it did not want to put in jeopardy its chance of obtaining an affirmance.  *Exmark*, 2018 U.S. Dist. LEXIS 107862, at *6-7 ("The court finds it inarguable that Briggs wanted to wait for the outcome of the Federal Circuit appeal prior to raising its venue objections.").

What is worse, Google did not just sit back waiting for the Federal Circuit to rule; Google affirmatively argued for affirmance of this Court's judgment *after* *TC Heartland* issued.  It did this not only at the January 11, 2018 oral argument,[6] but then again in its Petition for Rehearing, which was filed on April 11, 2019 (dkt. 65-4).

By continuing to endorse this Court's judgment, Google continued to endorse this Court's authority as a district with proper venue.  That conduct continued for nearly a year after

---

[6] The oral argument is available here:
http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-2738.mp3.

*TC Heartland* issued and it constituted a forfeiture.[7]

>**2.**   **Google again forfeited its objection by delaying the filing of a venue motion after the remand.**

The Federal Circuit mandate issued on June 15, 2018.  Dkt. 57.  But Google did not file a motion to transfer until nearly five months later, on November 12, 2018.  Dkt. 69.  Why did Google wait so long?  Because it wanted to first take the Court's temperature on Google's re-asserted claim preclusion defense.  Google did not want to file a venue motion with this Court (and potentially win) if it looked like the Court would be receptive to again dismissing the case on claim preclusion grounds.  So Google held back its venue motion and waited for the Court to signal its intentions as to a new claim preclusion motion.

When the Court issued an order for more briefing (dkt 68), ruling that Google did not even need to file a new claim preclusion motion but could simply file an additional brief in support of its prior motion, Google took that as a favorable sign.  Google asked SimpleAir to stipulate that it could hold off even further on bringing a venue motion until after it obtained what it expected to be another favorable ruling on the claim preclusion motion.

Google's months-long delay and "wait-and-see" approach thus constituted a second forfeiture of Google's improper venue objection.  *Tinnus Enters., LLC v. Telebrands Corp*., No. 6:15-CV-00551-RWS, 2018 U.S. Dist. LEXIS 172381, at *5 (E.D. Tex. Oct. 5, 2018) ("A good consideration for a claim of forfeiture would be 'a defendant's tactical wait-and-see bypassing of an opportunity to declare a desire for a different forum, where the course of proceedings might

---

[7] Google's reliance on the finding of no forfeiture in *Realtime* is inapposite.  Dkt. 69 at 5, citing *Realtime Data LLC v. Hewlett Packard Enter. Co.*, No. 6:18-CV-00383-RWS, 2018 U.S. Dist. LEXIS 163581 (E.D. Tex. Sept. 24, 2018).  An IPR is a parallel proceeding at the PTAB.  When a defendant files and prosecutes an IPR, the Defendant is not endorsing the authority, or any judgment, of the district court.

well have been altered by such a declaration.'" (characterizing and quoting *In re Micron Tech., Inc.*, 875 F.3d 1091, 1102 (Fed. Cir. 2017)).

* * *

Accordingly, Google has affirmatively endorsed the propriety of venue in this District, first seeking an affirmance on the merits in the Federal Circuit and then again seeking a repeat win on the merits after remand.  Google has forfeited its venue defense.

**B.      Google has a regular and established place of business in the District.**

**1.      The GGC servers and the space the servers occupy constitute a regular and established place of business of Google.**

**a.      The GGC servers and the locations where they are housed are physical places.**

In *Seven*, this Court found that "the GGC server itself and the place of the GGC server, both independently and together, meet the statutory requirement of a 'physical place.'"  *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 954 (E.D. Tex. 2018).  The Court reached that conclusion following a detailed consideration and discussion of Google's Beta Service Agreement with Suddenlink, which was representative of Google's other such agreements.  *Id.* at 951-954, *id.* n.28.  ██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████  ████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████  The Court should reach the same conclusion here as it did in *Seven*.  There is no relevant distinction between this case and *Seven* when it comes to Google's GGC servers in the District.

---

[8] This is the same agreement that was filed in the *Seven* case at dkt. 141-23.

Google argues that the GGC servers are not "physical places of business" because "[a] server is a piece of hardware or equipment, not a place," such as a building or quarters.  Dkt. 69 (Google Motion) at 9.  These are the same arguments Google made in *Seven* and they should be rejected by this Court for the same reasons as in *Seven*.  *Seven*, 315 F. Supp. 3d at 950-954.

        **b.**       **The GGC servers and the locations where they are housed are regular and established places of business.**

In *Seven*, this Court found that "the GGC servers and the place where the servers are lawfully housed" are, "undoubtedly," ""places of business' within the meaning of the statute." *Id.* at 954.  The Court found that the GGC servers "actively service a distinct business need of Google's," *id.* at 956, and "are best characterized as local data warehouses, storing information in local districts to provide Google's users with quick access to cached data, avoiding the delays associated with distant data retrieval from Google Data Centers." *Id.* at 960.  "Holding that Google's business done at and through the GGC servers faithfully comports with the language of the statute; it is the logical result this Court has reached." *Id.* at 961.  In this case we have the exact same company (Google) running the exact same business and using not only the exact same overall architecture to do so but the exact same instances of GGC servers in the District. Ex. 6 at 1-2; Ex. 7-9; ex. 3 (Non-Dispute Agreement) at 1.  The Court should reach the same conclusion here as it did in *Seven.*  There is no relevant distinction between this case and *Seven* when it comes to Google's GGC servers and the places that house them being regular and established places of business.

Google argues that "servers are not 'places of businesses,' let alone regular and established places of business of Google."  Dkt. 69 at 9.  According to Google they are more like "slot machines or vending machines, and do not rise to the level of being places ***of business***."

*Id.* (emphasis in original).  Google made these same arguments in *Seven* and the Court should

again reject them, for the same reasons.  *Seven*, 315 F. Supp. 3d at 954-956.

      Google argues that ██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ Dkt. 69 at 8.  But this motion does not concern issues of damages

or non-infringing alternatives or apportionment.  This is a venue motion.  And as this Court

correctly found in *Seven*, in rejecting these same arguments by Google, "[t]he statue does not

require 'substantial' business or 'large' impact from the business being done at the place of

business—in order to lay proper venue in a judicial district, the statute simply requires that *a*

regular and established place of business be present."  *Seven*, 315 F. Supp. 3d at 956-57.

      Finally, Google argues that the GGC servers are not like warehouses because "a

warehouse is real property, and it is staffed by actual employees of the business."  Dkt. 69 at 10.

"A closer (though by no means perfect) analogy for a GGC server, which temporarily stores or

'caches' popular content for uses, would be a storage locker."  *Id.*  This argument also fails.

      *First*, whether the specific content cached at the GGC server is stored there "temporarily"

is irrelevant.  The thing that must be "regular and established" is the place of business (i.e., the

GGC server), not its inventory or content.  *Second*, the GGC servers are located on real

property—the facilities that house the servers—and the specific space that the GGC servers

occupy is part of that real property; so this is no distinction.  *Third*, it does not matter whether the

GGC servers are "staffed by actual employees."  As this Court correctly observed, the statute

"does not require that the place of business *also be* a place of employment by the defendant."

*Seven*, 315 F. Supp. 3d at 962 (emphasis in original).  *Finally*, unlike a storage locker that simply

contains items, the GGC servers are not mere passive containers of data—they not only store but

deliver the content they cache, thus actively performing an important part of the business of

Google. ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

### c.  The GGC servers and the locations where they are housed are regular and established places of business of Google.

Relying on case law, logic, and the very same Suddenlink agreement that is applicable to the time frame in this case, this Court concluded in *Seven* that "the GGC servers and their locations within the various ISPs within this District are 'places of Google' sufficient to meet the statutory requirement of § 1400(b)." *Seven*, 315 F. Supp. 3d at 966-67. The Court should reach the same conclusion here as it did in *Seven*. There is again no relevant distinction between this case and *Seven* when it comes to Google's GGC servers and the places that house them being places of Google "under the exclusive control of Google." *Id.* at 966.

Google argues that (1) the GGC servers are "manufactured, sold, installed and physically maintained by third parties in locations controlled by third parties" and "are hosted in server rooms by local third party Internet Service Providers," (2) "Google does not own, lease, or control the space where the servers are kept" and "Google has no access whatsoever to that physical space as long as the relationship with an ISP exists," (3) "[n]o Google employee has ever seen or visited the servers in the Eastern District; and Google does not even know precisely where the servers are installed," and (4) "Google does not have rights to physically access the spaces in which the GGC servers are stored while the service agreements are in force." Dkt. 69 at 9. The Court considered and rejected each of these arguments in *Seven*. 315 F. Supp. 3d at 965-66 ("Google's ownership of the server and its contents is absolute, as is its control over the server's location, once installed…Google itself has denoted that the GGC servers are places of

---

[9] In *Seven,* this Court considered but was not persuaded by the *CDx* case Google cites here (dkt. 69 at 10). *Seven*, 315 F. Supp. 3d at 959, n.37.

Google." (internal quotation marks omitted)).  There is no reason for a different conclusion here;
these are the same type and actual instances of servers at issue in *Seven*, controlled by Google
under the same contracts.  Ex. 6 at 1-2; Ex. 7-9.

### 2.    The GGC servers are related to the alleged acts of infringement.

Google argues:  "The alleged acts of infringement in SimpleAir's Complaint are not tied
or related to Google's purported 'regular and established place of business,' as required by 28
U.S.C. § 1400(b)."  Dkt. 69 at 11.  This argument fails.  As this Court correctly found in *Seven*,
the statute does not require that the "regular and established place of business" of the defendant
be related in any way to the alleged acts of infringement.  *Seven*, 315 F. Supp. 3d at 945-46
("This Court therefore rejects Google's proposition that the special patent venue statute requires
that alleged acts of infringement by the Defendant pled to meet the requirements of § 1400(b)
must be 'tied to or related to' the regular and established place of business of the Defendant,
which is separately required by § 1400(b).").  ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████

### C.    Google has committed acts of infringement in the District.

Google argues that "SimpleAir's Complaint must be dismissed because SimpleAir fails
to allege sufficient facts establishing that Google 'has committed acts of infringement' in this
District."  Dkt. 69 at 11.  Google further argues:

> While SimpleAir alleges that programs within Google's "GCM servers (including
> at the Cloud Connection Server, GCM Frontend, GCM Backend, Kansas, Buzz
> router, and MCS (Mobile Connection Server))" may perform the recited
> functionality (id. ¶ 15), it does not allege that any of these servers are located in
> this District, that the servers or the accused functionality was made, designed, or
> developed in this District, or that Google has infringed in this District (see id. ¶¶
> 8-9). In fact, Google has no data centers in this District at all. Durbin Decl. ¶¶ 11-

12 . With respect to the asserted claims, SimpleAir does not allege that any of the recited steps were ever carried out in this District. Complaint ¶¶ 8-9.

Dkt. 69 at 12.  Google's arguments fail.

First, SimpleAir's complaint does allege that Google has committed acts of infringement within the District.  Dkt. 1 (Complaint) ¶9 ("Venue is proper in this Court because Google is responsible for acts of infringement occurring in the Eastern District of Texas as alleged in this Complaint, and has delivered or caused to be delivered infringing services and products in the Eastern District of Texas.").  And to the extent the Court deems these allegations insufficient in their specificity, we respectfully request leave to amend to add more detail—particularly as the complaint was filed before *TC Heartland*.

Second, the various GCM servers that Google identifies need not be located in the District for Google to be infringing in the District.  As long as at least some of the acts that constitute infringement are performed in the District, we have met the statute.  *Seven*, 315 F. Supp. 3d at 943 (rejecting Google's argument, which Google does not assert here, that the entirety of the claimed method must be performed in the District).  As explained below, that is the case here—regardless of the location of the servers that constitute the GCM.

Claim 1 of the '048 patent is asserted (along with numerous dependent claims), and concludes with the step of "transmitting the messages to the selected remote computing devices and notifying the selected remote computing devices of receipt of the received data whether the selected remote computing devices are online or offline to the information providers of the received data."  Dkt. 1 ¶15 (emphasis added).  As the complaint alleges, the notifying limitation is performed "by virtue of the transmission itself and also by the automatic triggering of an interrupt or similar signal that the transmission causes within the devices."  *Id.* (emphasis added). In other words, it occurs in the District when messages are sent by the Google service to Android

devices that are within the District.  ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

Claim 1 of the '838 patent is also asserted (along with numerous dependent claims), and concludes with this component:  "a transmission gateway for transmitting the messages to the selected remote computing devices for instantaneously <u>notifying the selected remote computing devices of receipt of the received data</u> whether the selected remote computing devices are online or offline to the information providers of the received data."  Dkt. 1 ¶23 (emphasis added). As the complaint alleges, the notifying limitation is performed (and thus the "transmission gateway" component of the system is used) "by virtue of the transmission itself <u>and also by the automatic triggering of an interrupt or similar signal that the transmission causes within the devices</u>."  *Id.* (emphasis added).  In other words, the use of this component of the claimed system occurs in the District when messages are sent by the Google service to Android devices within the District.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

## VI.   The Court should deny Google's 1404 transfer motion.

### A.   The private interest factors.

#### 1.   Sources of proof.

Google fails to identify any SimpleAir documents located in Central California that are not also located in this District and not already produced to Google electronically and thus available in any district.  And there are none.  Ex. 14 (Von Kaenel decl.) ¶4; ex. 15 (Payne decl.) ¶11.  In addition, to the extent Google is relying on "witnesses still residing" in Central California (i.e., inventors Payne and Von Kaenel), Dkt. 69 at 16, that does not count under this

factor.  The "sources of proof" factor is about the location of proof not people, *E-Contact Technologies, LLC v. Apple, Inc.*, case no. 1:11-cv-426-LED/KFG, dkt. 405 (E.D. Tex. Sept. 28, 2012) at 11 ("Courts analyze this factor in light of the distance the documents or other evidence must be transported from their existing location to the trial venue"), and Google cannot identify any proof uniquely co-located with our inventors in California.  Ex. 14 ¶4; ex. 15 ¶11.

Google also fails to identify any documents of Google or of third parties that are located in Central California and not in this District or, by virtue of their electronic production, available in every district.  To the contrary, Google asserts that all of its relevant documents have already been produced:  "Google is not aware of relevant hard copy documents in Northern California not previously scanned or produced in the prior litigation."  Dkt. 69 at 17, n4.

Accordingly, Google fails to show that this factor favors transfer.

### 2. Compulsory process.

Google mentions third party inventors but then acknowledges they are irrelevant to this factor because they do not live in California or Texas.  Dkt. 69 at 18.  Google then points to third parties Baldav Krishnan, Steven C. Sereboff, and Jonathan Pearce, all residents of California.  *Id.* Google does not explain why prosecuting attorneys Sereboff and Pearce would be trial witnesses, nor why they would need to be subpoenaed and not come voluntarily in duty to their client.  *Id.* Notably, none of the prior trials have involved any of the patent prosecutors; indeed, Google did not even bother to depose them in any of the prior suits.  Google also makes no showing that Mr. Krishnan would need to be subpoenaed to appear at trial.  Indeed, he voluntarily appeared for trial in Texas in 2015, at Google's request; there is no reason to think he would not do the same.

Accordingly, Google fails to show that this factor favors transfer.

### 3. The cost of attendance for willing witnesses.

"While the Court must consider the convenience of both the party and non-party

witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG, 2014 U.S. Dist. LEXIS 155805, at *11 (E.D. Tex. Nov. 3, 2014); *ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-CV-00798-JRG, 2014 U.S. Dist. LEXIS 118588, at *6 (E.D. Tex. Aug. 26, 2014) (same); *RPost Holdings, Inc. v. StrongMail Sys.*, 2013 U.S. Dist. LEXIS 116894, *12 (E.D. Tex. Aug. 19, 2013) (same).  Google identifies the following non-party witnesses:  James Matthews and Steven Campbell (located in New Hampshire), non-party inventors Jeffrey Wang (Seattle area), David Starr (Boston area), and Jason Katz (New York area).  Dkt. 69 at 19-20.  All but one of these individuals is located closer to this District.  And Google submits no evidence that any of these witnesses would willingly appear at a new trial.

Google also claims California is more convenient for SimpleAir's party witnesses.  Dkt. 69 at 19-20.  But a defendant seeking to transfer venue cannot succeed in that effort by claiming the transferee forum is more convenient for the plaintiff.  When a plaintiff chooses to file its case in a particular venue that choice demonstrates that the plaintiff does not consider the venue to be inconvenient.  Moreover, SimpleAir's two likely witnesses—John Payne and Tim von Kaenel— do not consider it inconvenient to attend trial in this District.  Ex. 14 (von Kaenel decl.) ¶¶2-3; Ex. 15 (Payne decl.) ¶¶ 8-10.

Google also points to its own party witnesses.  Dkt. 69 at 20-21.  But none of those witnesses are located in Google's proposed forum of Central California, which means they would have to travel to trial regardless.  And Google fails to show that any of its witnesses would be significantly inconvenienced by travel to this District for trial, as they have before.

### 4.      Practical problems.

This factor weighs heavily against transfer, for two reasons.

<u>First</u>, because Google delayed filing its transfer motion.  *In re Wyeth*, 406 F. App'x 475,

477 (Fed. Cir. 2010) ("The Fifth Circuit as well as other circuits have emphasized that a party should not delay filing of a motion to transfer."). This case was filed on April 8, 2016. Dkt. 1. 147 days passed between the filing of the Complaint and this Court's dismissal order entered September 2, 2016. Dkt. 50. Google raised no objection to venue during that time. This case was then remanded on June 15, 2018. Dkt. 57. An additional 150 days passed until Google finally filed its transfer motion on November 12, 2018. Dkt. 69. That's a total of 197 days (not counting the time on appeal), i.e. more than six and a half months, that Google delayed moving to transfer this case—while at the same time, during both stretches, affirmatively asking this Court to rule on the merits. Google's failure to challenge venue under § 1404 in the prior cases also compounds this delay. If Google thought it had a meritorious challenge to venue under § 1404, it should have brought that challenge when the second SimpleAir lawsuit was filed in November 2013. Instead, Google went on to litigate that case through a *Markman* and through trial. Google has no explanation for its delay.

Second, this Court's prior experience with the SimpleAir patents also weighs heavily against transfer. "Though considerations of judicial economy pertaining to co-pending litigation or prior experience with the patents-in-suit will not overcome considerations that would otherwise warrant a clear transfer, they are factors which may nonetheless be weighed in the Court's analysis." *Geotag, Inc. v. OnTargetJobs, Inc*., case no. 2:13-cv-0064-JRG (E.D. Tex. Mar. 7, 2014), Dkt. 28 at 5, citing *In re EMC Corp*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013); *In re Vistaprint Ltd*., 628 F.3d 1342, 1344 (Fed. Cir. 2010); *In re Zimmer Holdings, Inc*., 609 F.3d 1378 (Fed. Cir. 2010). As the Court is well aware, the Court has conducted two *Markman* hearings and presided over three trials concerning related SimpleAir patents. The Court's substantial prior experience with the patents, the accused products and prior art, and the parties is irreplaceable and cannot be replicated.

21

Google's arguments about improper joinder (Dkt 69 at 22) are irrelevant.  In addition, Google's claims of venue manipulation by SimpleAir (*id.*) are unfounded and have been waived by Google's failure to challenge venue in the prior two suits or to even file a mandamus petition in the parties' first case.  Indeed, if any party has attempted to manipulate venue it is Google. Without making any challenge to venue in response to the filing of this case, Google (a) went ahead and filed a new case against SimpleAir in Los Angeles at the same time it was asking this court to rule on the merits in this case and (b) took the unprecedented step of personally naming inventors Payne and von Kaenel as Defendants, precisely so they could attempt to argue to the Los Angeles court that the case had to remain in Los Angeles because Payne and von Kaenel could not be sued in Texas.[10]

### B.      The public interest factors

#### 1.      Court congestion.

No other court can bring this matter to trial more efficiently and quickly than this Court, given this Court's experience with this case and the fast trial settings now being given in the District.  Google's statistics fail to overcome those realities.  This factor weighs against transfer.

#### 2.      Local interest.

The Central District of California does not have a local interest in the case merely because Google is located elsewhere in California or because Google has a Los Angeles office. That office has no relevant people, evidence, or operations that we are aware of or that Google has identified.  The Central District of California does have some local interest given that the original patentee, AirMedia, had an office in Orange County back in the late 1990s, but this

---

[10] The California case is currently stayed pending the resolution of this motion.  Once the stay of that case is lifted SimpleAir will re-urge its motion to dismiss the claims against Payne and von Kaenel (and alternatively move to sever or stay those claims) and seek to transfer the actual infringement case to this District to be consolidated with this case.

District also had ties to AirMedia in that time:  the company's AirMedia Live! service sent its notifications through the network of Plano-based PageNet.  Ex. 15 (Payne decl.) ¶6.  In addition, SimpleAir has been a Texas corporation since 2009, and at the time of filing SimpleAir had a long-standing office in Plano, the company's only office.  *Id.* ¶¶2-4.

Accordingly, SimpleAir has ties to both districts.  And while Google itself has ties to the Central District of California, those ties are unrelated to any relevant Google people or products.  Google has therefore failed to show this factor clearly weighs in favor of transfer.

> **3.     Familiarity of the forum &**
> **4.     Avoidance of unnecessary problems**

Google does not contend that either of these factors favors transfer.

**VII.   Conclusion.**

For the foregoing reasons, the Court should deny both of Google's motions.

Date:  February 22, 2019

Respectfully submitted,

By: */s/ Jeff Eichmann* _____
John Jeffrey Eichmann
CA State Bar no. 227472
(admitted to practice before the U.S. District
Court for the Eastern District of Texas)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: jeff@dovel.com

ATTORNEYS FOR PLAINTIFF
SIMPLEAIR, INC.

**<u>Certificate of Service</u>**

I certify this document is being served on counsel of record by email on the filing date listed above.

*/s/ Jeff Eichmann*

**<u>Certificate of Authorization to File under Seal</u>**

I certify that the foregoing document and all supporting declarations and exhibits are being filed under seal pursuant to the agreed upon terms of the Protective Order filed at dkt. 45 and the parties' stipulation at dkt. 67.

*/s/ Jeff Eichmann*